### MIXER & WHITTEMORE *v.* ABEL S. WILLIAMS.

Where the defendant contracted to deliver to the plaintiffs thirty tons of starch per year for two years, it was held that the contract, though entire in its terms, was yet divisible in its character, and that the plaintiffs might, at the expiration of the first year, sustain an action against the defendant for any breach, on his part, of that portion of the contract that was to be performed that year.

When, in an action on contract, the testimony is all on paper, and is before the court, it becomes the duty of the court to instruct the jury, as a question of law, whether the testimony, all being true, proves the contract alleged,— and, if the contract is not proved, as alleged, to direct the jury to return a verdict for the defendant.

In this case the testimony was, that the defendant, a starch manufacturer, authorized the plaintiffs, who were commission merchants in Lowell, to contract for him thirty tons of starch per year for two years, and that the plaintiffs, having *previously* contracted to deliver to the " Boot Mills," a corporation in Lowell, sixty tons of starch in one year, for thirty tons of which they had contracted with another starch manufacturer, thereupon *appropriated* the amount specified by the defendant for the first year to meet the remaining thirty tons to be delivered by them to the " Boot Mills," and notified the defendant that they had contracted his starch, as he had authorized them to do,—and it was held that this evidence did not support a declaration, in which the plaintiffs set forth the authority given them by the defendant and then alleged, that, relying upon that authority, and the promise of the defendant to deliver the starch according to its terms, they had contracted with the " Boot Mills," " and with certain other individuals and corporations in Lowell," for the sale and delivery to them of the quanty of starch mentioned by the defendant, to be delivered at the times and on the terms proposed by him.

And it was farther held, that this evidence did not support a count in the declaration, which alleged that the defendant *bargained and sold to the plaintiffs* the amount of starch specified in his proposal to them, upon the terms and at the price mentioned by him.

And it was held that this second count was not supported by evidence that the plaintiffs, after they had given notice to the defendant that they had contracted his starch, prepared and forwarded by mail to the defendant a memorandum of an agreement, purporting to be an agreement by the defendant to deliver *to the plaintiffs* the quantity of starch specified by him, upon the proposed terms as to price and time of delivery, and requested him to sign and return the same, and that he wholly neglected to do so.

58

ASSUMPSIT. The plaintiffs alleged, in the first count in their declaration, that the defendant, on the 30th day of June, 1841, requested the plaintiffs to contract for him for the sale of a large quantity of starch, to be delivered by him at Lowell, Massachusetts, to wit, thirty tons per year for two years from the first of October, 1841, to be delivered by him in quantities of not less than six nor more than eight tons per month, to be paid for at the rate of four cents per pound, as the same should be delivered; that the defendant, in consideration that the plaintiffs would so contract, promised to deliver the starch in the quantities and on the terms above mentioned; that the plaintiffs, relying upon this promise, did afterwards, to wit, July 14, 1841, contract with a corporation in Lowell, known as the "Boot Mills," and with certain other individuals and corporations in Lowell, for the sale and delivery of sixty tons of starch, to be delivered in the quantities and at the times above named; that the said corporations and individuals agreed with the plaintiffs to receive, and the plaintiffs bound themselves to said corporations and individuals to deliver, said starch in the quantities and on the terms specified,—of which the defendant had notice; but that the defendant had never delivered any portion of said starch, although the time for the delivery of thirty tons of it had elapsed. In the second count the plaintiffs alleged that the defendant had bargained and sold to them sixty tons of starch, and had promised to deliver the same to the plaintiffs, at Lowell, in the quantities and on the terms specified in the first count, but that he had neglected and refused to deliver any portion thereof. Plea, the general issue, and trial by jury.

On trial the plaintiffs gave in evidence a *letter from the* defendant to the plaintiffs, dated May 8, 1841, which was in these words; "Gent. I wish you to write to me and let me know what you can ' do for me for two years, or three years, and I will give you an ' swer, when we send the remainder of our starch," &c. Also, a letter from the plaintiffs to the defendant, dated May 14, 1841, which was in these words; "Sir. Your favor of the 8th May ' was duly received. * * * In regard to contracting two or three ' years, we can say nothing different from what we said in our last. ' We can contract from thirty to fifty tons per year for three years, ' at four cents; but you must fix the amount it shall be per year.

Mixer et al. *v.* Williams.

'To contract *what you make* would not make them sure of any. The 'object of making a contract beforehand is, to be sure of receiving 'a certain amount, for the time agreed on, at a fixed price." Also, a letter from the defendant to the plaintiffs, dated June 16, 1841, which was in these words; " As respects contracting starch for one 'or two years, I will say from 20 to 25 tons per year for one or two 'years, in case I can send it as fast as I make it,—which would be 'from six to eight tons per month,—for four cents, if you cannot 'sell it for any thing more than that." Also, a letter from the plaintiffs to the defendant, dated June 24, 1841, in these words; · "Sir, We have a chance to contract for you thirty tons of starch 'per year, for two years, at four cents, commencing next October, 'and will allow you to put it in as fast as you make it, if not over 'eight tons per month, nor less than six tons. They want that 'amount, or none, as they wish it all of one man's make. We can- 'not contract for any more than four cents at present, as there is 'plenty of it offered at that price. Please write by return of mail, if 'you wish us to make the contract for you." Also, a letter from the defendant to the plaintiffs, dated June 30, 1841, in these words; " Gent. I received yours of the 24th, stating you could contract my 'starch for two years, 30 tons per year, for four cents ; that is rath- 'er low, but I have concluded to let you contract for that, if you 'cannot do any better, and deliver it as you proposed, excepting the 'first month ; * * * but, if the weather will admit, I will deliver 'the six tons in October next." Also, a letter from the plaintiffs to the defendant, dated Aug. 2, 1841, enclosing a memorandum of a contract, according to the terms specified in the letters above, with a request that he would execute and return the same. Also, a let- ter from the plaintiffs to the defendant, dated Sept. 25, 1841, in these words ; "Sir, Will you please inform us how soon in October · 'we may expect the first load of starch to be delivered on the con- 'tract made for you for the 30 tons of starch per year for the next 'two years, commencing in October next. Your reply by return of 'mail will oblige," &c.

The plaintiffs also introduced two depositions of Isaac Pitman, who was their clerk in 1841, and who testified, in substance, as follows. In February and March, 1841, the plaintiffs, who were commission merchants at Lowell, Massachusetts, were making contracts with

the several manufacturing companies at Lowell, for supplying them with starch the ensuing year, and, among others, with the " Boot Mills," to furnish them with 60 tons of starch, of which one Melvin had contracted to furnish to the plaintiffs 30 tons. Upon the receipt of the defendant's letter of June 30, 1841, the plaintiffs appropriated the starch to be made by the defendant to the contract with the " Boot Mills," and relied upon it for that purpose. The plaintiffs had contracted to receive of Hall & Palmer 30 tons of starch; and when the contract was made by them with the " Boot Mills" they at first assigned this lot, to be delivered to the " Boot Mills " in part performance of the contract. But, upon the receipt of the defendant's letter of June 30, a change was made in this arrangement for his accommodation, the " Boot Mills" being willing to receive six or eight tons per month,—the supply expected from him. By the practice of the plaintiffs, in their business, these applications were not final. They arranged their supplies to meet the demand in the whole ; and the supply, for two years, expected from the defendant, was required, to meet the contracts for delivery which they had assumed during that period of two years. The arrangement was always made by them by such application of one or more supplies to meet one or more demands, according to amount and quality, for convenience,—the aggregate of the supply being kept equal to the aggregate of the demand, as nearly as possible. The particular application of the supply expected from the defendant was for one year only, because that was the extent of the contract with the " Boot Mills "; but the plaintiffs' arrangement of contracts to deliver starch was adapted to the supply expected from the defendant for two years. Soon after the receipt by the plaintiffs of the defendant's letter of June 30, another starch manufacturer applied to the plaintiffs to dispose of fifty tons of starch for him,—which they declined doing, relying upon the instructions contained in that letter. No starch was sent by the defendant to the plaintiffs after the receipt by them of that letter, and, in consequence of this, the plaintiffs were obliged to purchase starch to complete their contract with the " Boot Mills," and did purchase to the amount of thirty tons, and paid therefor the then cash price in the market, which varied from four cents and three fourths to five cents per pound. This excess, paid by the plaintiffs above the price at which the defendant

Mixer et al. *v.* Williams.

was to deliver his starch, together with their commission of two and a half per cent. for making the sale, amounting in the whole to $530,-53, the plaintiffs claimed as damages from the defendant, and an account thereof was rendered to him from time to time, as the purchases were made.

Upon this *testimony* the court instructed the jury that the plaintiffs were not entitled to recover, and a verdict was accordingly returned in favor of the defendant.   Exceptions by plaintiffs.

*L. B. Peck* for plaintiffs.

1.   The correspondence between the parties sufficiently shows the plaintiffs' authority to contract the starch in the manner stated in the declaration.   The depositions, it is true, do not, in terms, state that the defendant's starch was specifically contracted, or that the second year's lot was to be delivered monthly'; but it is evident that the defendant, under the contracts made, would have had the right to deliver his starch in the quantities stated in the declaration. It cannot be said that there is a *material* variance.

2.   May not this be regarded as a contract of sale by the defendant to the plaintiffs, and the latter be permitted to recover under the second count?   Such it is in effect.   The plaintiffs could not contract for the sale of the starch on the defendant's responsibility. They were obliged to and did bind themselves personally for the delivery.

3.   On the merits of the case there would not seem to be much doubt of the plaintiffs' right to recover.   The defendant's letters authorized them to sell his starch, and they did so, and he was duly apprised of this fact.   This court, at its last term in this county, held that the letters of August and September were evidence, tending to show that the defendant was duly notified of the sale.   This was, in effect, saying that the agreement between the parties was so far consummated, that the plaintiffs had the right to contract the starch and bind the defendant for its delivery.

*L. B. Vilas* and *Kinsman & French* for defendant.

1.   The construction of the depositions and correspondence between the parties was a question of law; and it was within the province of the court to put a legal construction upon it.

2. The testimony does not show that the plaintiffs made any contract whatever for the defendant. Theob. Pr. & Ag. 18. In order to make the defendant liable in this case, and entitle the plaintiffs to recover damages, they must show that they made a definite contract for the defendant for the sale of his starch, and to whom they sold it, and that it was such a contract as the defendant authorized them to make, so that the defendant might know whom he had to deal with, and to whom he could look for damages, if there was a failure on the part of the purchaser. Theob. Pr. & Ag. 241, 358, and cases there cited.

3. There was a material variance between the proof and the plaintiffs' declaration. The declaration states that the plaintiffs made a contract with the Boot Mills and other corporations and individuals in Lowell. The proof does not show that they ever made any contract with any one; and they do not pretend that they made any for more than one year. *Vail* v. *Strong*, 10 Vt. 457.

4. There cannot be any pretense, from all the testimony in the case, that there was any sale for the defendant's starch consummated. The most, that can be made out of the testimony, is, a proposition on the part of the plaintiffs to purchase for themselves the defendant's starch. Now it is a fundamental rule, applicable to both sales and purchases, that an agent, employed to sell, cannot make himself the purchaser, nor, if employed to purchase, can he be the seller. Theob. Pr. & Ag. 219, 357, 362. *Wright* v. *Dannah*, 2 Campb. 203. 2 Chitty Rep. 205. 1 Swift 332.

The opinion of the court was delivered by

HEBARD, J. The defendant, in argument, has started a preliminary question, that, as this was an entire contract, the plaintiffs could not sustain this action, until the time for fulfilling the contract had expired. That principle of law is correct, when correctly applied. This was an entire contract, but was divisible into parts, and was like a contract for the payment of money by instalments; and so the right of action accrues, whenever there is an instalment due, and admits of successive actions for each *breach*, or failure, to perform the contract.

The question in the case, before the court, is, whether the testimony *sustained* either count in the declaration; and not whether it

Mixer et al. *v.* Williams.

*tended* to sustain it. The testimony was all on paper, and was before the court, and, as a question of law, it became the duty of the court to instruct the jury whether the testimony, all being true, proved the contract alleged. When an objection is taken to the *admission* of testimony, then the question of *tendency* is involved.

In relation to the first count, we find no difficulty in making out the authority from the defendant to the plaintiffs to contract his starch, as therein set forth; but the difficulty is, in finding the evidence that they did so contract it. If it is to be found, it is in the deposition of Isaac Pitman. By this it appears that the plaintiffs were already under contract with the "Boot Mills" to deliver to them sixty tons of starch per year,—thirty tons of which the plaintiffs had contracted for with one Melvin,—and that upon the receipt of the defendant's letter of June 30, authorizing the plaintiffs to contract his starch, the plaintiffs *appropriated* the starch to be made by the defendant to the contract with the "Boot Mills." This falls short of proving the allegation in the writ. The only contract the plaintiffs made with the "Boot Mills" was made before the 30th of June, and before the defendant had authorized them to contract his starch; and at the time the plaintiffs contracted with the "Boot Mills," they not only had no authority to contract the defendant's starch, but they did not do so in fact.

In relation to the second count, a part of the same remarks will apply. This counts upon a contract of sale from the defendant to the plaintiffs. The proposition from the plaintiffs to the defendant and the authority back, in the letter of June 30, were to contract for the sale of it to others; it was not, therefore, a contract to sell to the plaintiffs. The plaintiffs rely upon the memorandum of sale, sent to the defendant for him to sign and return. The letter containing this memorandum and a subsequent letter, of Sept. 25, from the plaintiffs to the defendant, were held by this court, a year since, as being notice to the defendant that the plaintiffs had contracted his starch. Their having authority to contract, and giving notice back that they had contracted, does not relieve the difficulty. While claiming damages for a violation of the contract on the part of the defendant, the plaintiffs must prove that they contracted the starch, as they were authorized to do, and as they gave notice that they had done. This they have failed to do.

Mixer et al. *v.* Williams.

The memorandum contained the terms of a contract between the plaintiffs and the defendant; and it is urged that the defendant's neglect to answer or return the memorandum is to be taken as evidence that he assented to the terms of it. The converse of this I should hold, as being the most tenable. When the plaintiffs sent this memorandum to the defendant, they requested him to sign and return it; therefore his neglect to return it would be notice to the plaintiffs that he did not ratify it.

The plaintiffs, upon their proof, are not entitled to recover upon the first count, because they did not contract the defendant's starch with the " Boot Mills" corporation, although they were authorized to do so, and notified the defendant that they had done so; and, under the second count, the plaintiffs fail to prove that any negotiation was commenced for the sale of the starch to the plaintiffs.

The judgment is affirmed.