Reid v. Mix.

DORA A. REID v. ELI MIX *as Executor, etc.*

No. 12,426.   (66 Pac. 1021.)

SYLLABUS BY THE COURT.

1. CONTRACT—*Specific Performance.*   Whether specific performance of the terms of a mutual contract shall be decreed, under all the facts and circumstances which go to make up the equities between the parties, rests largely in the sound discretion of the court.

2. ——— *Where Time is Not the Essence.*   One seeking to rescind a mutual contract, of which time is not the essence, on the ground of delay by the other party in complying with its terms, must show either such wilful and intentional delay as will evince the intention of the party delaying to treat the contract at an end, or that the delay has caused such damages as will render a decree of specific performance inequitable and unjust.

Error from Elk district court; C. W. SHINN, judge. Opinion filed December 7, 1901. Division two. Affirmed.

## STATEMENT.

THIS was an action brought by Eli Mix, as executor and trustee of the estate of Hezekiah Gilbert, deceased (herein referred to as "the estate"), against Dora A. Reid (herein called "the defendant"), to compel specific performance of the following stipulation between the parties, made in compromise and settlement of a foreclosure suit in the federal court:

"It is hereby stipulated by and between the parties hereto that said plaintiff shall release the mortgage sued on in this action so far as the same is a lien upon the lands described in the answer of said defendant Dora A. Reid, as guardian of said Eliza Simmons, and covering the interest that the said Eliza Simmons had therein at the time of the execution of said mortgage. It is further agreed that Dora A. Reid shall convey the remainder of the lands described in the said complainant's bill filed herein, by quitclaim deed, to such party as the said complainant shall direct; that such land, to be so conveyed by the said Dora A. Reid, is the land owned by G. O. Simmons and that was in his name at the time the mortgage herein sued on was executed. Said deed shall be executed and delivered as soon as the southwest quarter of said section 27 is mutually divided, if the same can be done, and, if such division cannot be made, then said deed shall be executed and delivered immediately upon the release of said mortgage as above mentioned; that upon such release of said mortgage and the delivery of said deed the above-entitled action shall be dismissed so far as the interest owned by Eliza Simmons is concerned, and said complainants shall pay the costs of this suit.

"In witness whereof, we have hereunto signed our names this 12th day of November, 1897.

DORA A. REID.

BURCH & BURCH AND J. A. McHENRY
*Attorneys for Plaintiff.*"

The facts involved in the making of this stipulation and those necessary to a determination of this controversy are substantially as follows : On the 1st day of April, 1889, one G. O. Simmons was the owner of the southeast quarter of section 27 and three acres in the southeast corner of the southeast quarter of section 28 ; Eliza Simmons, his sister, was the owner of nine acres in the southeast corner of the southeast quarter of section 28 and eight acres in the northeast quarter of section 33 ; and the said G. O. Simmons and Eliza Simmons were the owners as tenants in common of the southwest quarter of section 27, all in township 30, range 11, Elk county. On said date, G. O. Simmons and Eliza Simmons executed a mortgage on the above-described property to one S. J. Haines, to secure payment of a promissory note in the sum of $2500. Thereafter, this promissory note became the property of the estate. Default having been made in the payment of this mortgage, foreclosure suit was commenced in the circuit court of the United States for the district of Kansas, third division, sitting at Fort Scott, Kan. Prior to the bringing of this foreclosure suit in the federal court, Eliza Simmons became insane, and Dora A. Reid was appointed guardian of her property. At the date of the above stipulation, both G. O. Simmons and Eliza Simmons had died intestate, leaving the defendant their sole surviving heir. In compliance with this stipulation, the suit in the federal court was dismissed and has not since been renewed. John Marshall, an attorney at law of Howard, Kan., represented the defendant in the suit in the federal court, and since said time has represented her interests in this transaction. One Charles W. Scranton, of New Haven Conn., acted as agent and representative of the estate in and about

the compromise, settlement and division of the real estate under this stipulation.

After the making of this stipulation there was considerable correspondence between Marshal and Scranton as to the equitable division of the southwest quarter of section 27 between the parties, and it was not until the month of April, 1898, that a division was agreed on. By this division the defendant was to retain the west half of this quarter-section and the three acres owned by G. O. Simmons in the southeast quarter of 28, and was to convey under the stipulation the southeast quarter and the east half of the southwest quarter of section 27 to the estate. It appears that at the time of the making of this division, the name of the party to whom the defendant was to convey under the terms of the stipulation had not been designated by the estate, and was not designated until about November 1, when the name of Charles W. Scranton, the agent, was selected. Nothing further appears to have been done after the division of the property between the parties, nor further correspondence had between Marshall and Scranton, until November 1, when the following letter was written by Marshall:

"HOWARD, KAN., November 1, 1898.
"Charles W. Scranton, New Haven, Conn.:

"DEAR SIR—In the Geo. O. Simmons matter, concerning which you wrote me several times, I desire some information from you now. Nearly a year ago we signed an agreement to convey the land owned by George O. Simmons and your client agreed to release the mortgage as to all owned by Eliza Simmons at the time of her death. A little more was to be released in the division of the land. A division has been agreed upon. We desire to make the deed and procure the release. This agreement is in the hands of your attorneys, and has been for nearly a year.

Can we get a release of the mortgage?   If we cannot, we desire to rent the whole of the land for another year. I have sometimes doubted whether your client knows anything of the transaction.   Please let me hear from you in regard to the transaction, and let me know whether we can expect the release of the mortgage.

Yours respectfully,   JOHN MARSHALL."

On November 5, Scranton replied to this letter as follows:

"NEW HAVEN, CONN., November 5, 1898.
"*Mr. John Marshall, Howard, Kan.*:

"DEAR SIR—I have yours of November 1, regarding the Simmons matter.   We have not heard a word in regard to it since your previous letters on the subject.

"We have shown your letter to Mr. Mix, the trustee, and suggested to him that he write to Burch & Burch, and I have an idea that he will write a letter to them that will wake somebody up; that is, if it is possible to wake anybody up.

Yours truly,   CHAS. W. SCRANTON."

And on December 19 Scranton again wrote Marshall, as follows:

"NEW HAVEN, CONN., December 19, 1898.
"*Mr. John Marshall, Howard, Kan.*:

"DEAR SIR—I have had some correspondence with Mr. McHenry, and have written him to-day that I was going to leave the settlement of this Simmons matter to you, himself, and Mr. Eby, and for that purpose I have sent a satisfaction of the mortgage to Mr. Eby with a letter which Mr. Eby will show you, and I wish that you and Mr. McHenry would meet with Mr. Eby and fix this matter up.

"And now, Mr. Marshall I know that you are on the opposite side to us, but I have such a high regard for you that I do not believe you will take any advantage of us in any way, and as I also have confidence in Mr. McHenry, I believe that with the assistance

of Mr. Eby, who is probably a disinterested party in the matter, you probably can come to some kind of an amicable settlement.

Yours truly,     CHAS. W. SCRANTON."

On the 11th day of November the defendant executed a quitclaim deed, under the terms of the stipulation and division, and on the 12th day of December presented the deed to the estate and offered to deliver the same upon the execution of the release of the mortgage, as provided in the stipulation, on the land to be retained by her, and notified the estate that unless such release was made within one week, and the stipulation complied with, she would refuse to be bound by its terms. On the 22d day of November, said stipulation not having been complied with or release of the mortgage produced, the estate was notified that the defendant refused longer to be bound by the terms of the stipulation. On the 23d day of December the estate tendered the mortgage released to the defendant and requested delivery of the deed. No objection was made by the defendant to the form of the release, nor by the estate to the deed tendered by the defendant. After the 22d day of November, and until the commencement of this action, the defendant refused to perform said stipulation or to be bound by its terms. At all times since the making of the stipulation the defendant has been in possession of all the real estate described therein.

This action was commenced by the estate to compel the specific performance of the terms of the stipulation; the case was tried on an agreed statement of facts; decree rendered in favor of the estate and against the defendant. From this decree the defendant brings error.

*John Marshall*, for plaintiff in error.

*J. A. McHenry*, for defendant in error.

The opinion of the court was delivered by

POLLOCK, J. : The sole ground of error relied on by counsel for the defendant for reversal of this decree is that no consideration was given or received by either party for the making of this stipulation, and that, on account of the delay of the trustee of the estate in complying with the terms of the stipulation, the defendant had the right to rescind it and to refuse compliance therewith, and that the trial court erred in decreeing compliance with its terms.

With this contention we do not agree. Counsel errs in the contention made that the stipulation lacks consideration. The estate had a mortgage on the entire tract of land and a suit to foreclose the same was pending. Whether or not this mortgage was valid as to the entire tract was undetermined. In the stipulation for compromise and settlement the estate not only waived its right to insist on a foreclosure and sale as to a part of the land, and permitted it to descend to the defendant as heir at law unencumbered, but dismissed its suit at its costs, and refrained from the bringing of another. It is well settled that this is ample consideration for the stipulation.

Again, by the terms of the stipulation, time is not made of the essence of the contract. Either party, therefore was entitled to a reasonable time, under all the circumstances of the case, to offer compliance with its terms. The representatives of the estate lived at a great distance from the property. The defendant was occupying and enjoying the use of the entire property. There is no showing of damage to

the defendant by the delay.   The agreement as to the mutual division of the common property was delayed until April.   Under the division as then made, in addition to one-half of the common property in extent of acres, the defendant was to receive three acres of the individual property of G. O. Simmons not provided for in the stipulation.   This intelligence, so far as shown by the record, was first communicated by Marshall to Scranton in his letter of November 1. The name of the person to whom the estate desired conveyance from the defendant for the benefit of the estate was furnished November 1, yet the defendant did not execute her deed until November 11, and on the next day demanded that, unless the mortgage was released as to the property to be received by the defendant under the stipulation, and the division made in April, within one week, she would refuse further to be bound by the stipulation; and this although the representatives of the owner of the mortgage who were expected to execute this release lived in the distant state of Connecticut.   On the 22d day of November she did declare her intention not to comply with the terms of the stipulation, and on the 23d day of December compliance with the terms of the stipulation and division made in April being tendered by the representatives of the estate, the defendant rejected the same, and gave as the ground of her right so to do that compliance had not been made within the time given.

Upon this state of facts, the trial court refused to excuse compliance with the terms of this stipulation by the defendant and decreed its enforcement.   With this conclusion we agree.   Whether or not specific performance of a mutual contract shall be decreed, considering all the facts and circumstances of the case which go to make up its equities, rests largely in the

sound discretion of the court.   (*Fowler v. Marshall*, 29 Kan. 665; Pom. Eq. Jurisp. [2d ed.] vol. III, § 1404; 20 Encyc. Pl. & Pr. 390, and cases cited.)

Again, where a mutual contract is equitable, and fairly entered into by the parties, and time is not expressly made of the essence of the contract, and neither party thereto has expressly by act or deed repudiated the binding force of the same, and one party seeks to evade its obligation on the ground of the delay of the other in tendering performance, he must show either damage resulting to himself or such wilful and intentional delay as to evince the intention of the party delaying to treat the contract at an end. Mr. Pomeroy, in his work on Equity Jurisprudence (2d ed.), section 1408, says:

"In all ordinary cases of contract for the sale of land, if there is nothing special in its objects, subject-matter, or terms, although a certain period of time is stipulated for its completion, or for the execution of any of its terms, equity treats the provision as formal rather than essential, and permits a party who has suffered the period to elapse to perform such acts after the prescribed date, and to compel a performance by the other party, notwithstanding his own delay."

Mr. Waterman, in his work on Specific Performance, section 456, says:

"At law it is incumbent on the plaintiff to show performance on his part within a reasonable time, or if the time be fixed, within such time. But equity, distinguishing between terms of the contract which are matters of form, and a breach of which it would be inequitable in either party to insist on as a bar, and such as are of the substance of the agreement, and applying to contracts the principles which have governed its interference in relation to mortgages, holds time to be, *prima facie*, non-essential."

48—63 KAN.

At section 465 the same author says :

"Although no time is fixed in the contract, a party will not be permitted to trifle with the interests of the opposite party by unnecessary delay ; and the latter may designate some reasonable time — not capriciously or unreasonably, or for the purpose of surprising the other, and thus getting clear of a bargain, but a reasonable time according to the circumstances of the case — within which he will expect performance, or that the agreement will be rescinded. The time named in the notice must be sufficient for the proper closing of the transaction ; and neither party will be permitted arbitrarily and suddenly to terminate the negotiation." (*Taylor v. Brown*, 2 Beav. 180 ; *King v. Wilson*, 6 id. 124.)"

In the case at bar the defendant remained in the possession of the entire tract of land ; no damage to her was shown by the delay of the representatives of the estate in releasing the mortgage. Both parties, until the 12th day of November, at which time the defendant tendered her deed, treated the contract in force. It would not be consistent with equity and good conscience to permit her to tender her deed under the terms of the stipulation and division of the common property which modified the original stipulation to some extent on the 12th day of November, and at the same time give notice to the representatives of the estate living at a great distance that, unless settlement according to the terms of the stipulation was made within one week, the contract would be treated by her as ended and she would refuse further to be bound by its terms ; nor, in pursuance of such notice, to terminate the contract and refuse performance tendered by the estate on November 23, on the sole ground of the delay and notice, without offer on her part to restore the estate, so far as within her power,

to the position it held when the stipulation was entered into.

The decree as entered appears to be in harmony with equity as between the parties, and is, therefore, affirmed.

CUNNINGHAM, GREENE, JJ., concurring.