· JAMES E. MORTIMER ET AL. *v.* ANDREW J. HANNAH.

LANDS. *Contracts. Construction. Rescission.*

A party to an equitable mutual contract in reference to land, fairly entered into, has the right to rescind the contract:

(*a*) When the other party has evinced his intention to abandon or repudiate the contract entirely; or

(*b*) When the other party has breached the contract in a matter which is vital to its existence, or is of its essence by the terms of the contract or the evident intention of the parties; or

(*c*) When the other party has been guilty of a partial breach of performance, which has inflicted damage upon the complainant for which no adequate redress can be had, or which inflicts irreparable injury, or which renders a final completion of the contract, according to its terms, impossible.

FROM the chancery court of Sunflower county.

HON. CAREY C. MOODY, Chancellor.

Hannah, appellee, was complainant, and Mortimer and others, appellants, were defendants in the court below. From a decree overruling defendants' demurrer to complainant's bill, the defendants appealed to the supreme court. The facts are stated in the opinion of the court.

*J. Holmes Baker* and *Mayes & Longstreet,* for appellants.

The main purpose of the contract was to get the four hundred acres cleared, the houses built, and the land deadened within the period of eight years, and the provision that the land should be cleared at the rate of fifty acres per annum is not vital.

The bill is filed to obtain a rescission of the contract, purely and simply on the ground that the lessees have not cleared the full one hundred acres, which was the ratable percentage of clearing for the years 1901 and 1902. There is no allegation

in the bill of any willful or intentional default on the part of the lessee, nor does the bill set out any action by them which would indicate that they are not proceeding with the performance of their contract in good faith and diligently. Indeed, the bill avers that the lessees and those claiming through and under them, are in actual possession of the land under said contract.

The contract, by its stipulations, does not make the ratable clearing of fifty acres per annum a special or particular condition.

In order to get at the intent of the parties it is necessary and proper to consider the instrument as a whole, and to deduce from it its main purpose and scope. When we do this we see the mere matter of clearing any particular proportion or percentage of the land per annum is purely secondary, and that the vital and substantial purpose of the contract is to have all the work done within the stipulated period of eight years.

The court will observe, in this connection, that no time is fixed prior to the end of eight years within which any of the tenant houses should be constructed. By the terms of the instrument the parties have the whole of eight years, or any part of the period, within which to build the houses, and yet the erection of tenant houses is just as essential to the profitable use of delta lands as is the clearing of the land itself.

Mr. Pomeroy, in the third volume of his Equity Jurisprudence (2d ed.), section 1408, says:

"In all ordinary cases of contract equity does not regard time as of the essence of the agreement. In all ordinary cases of contract for the sale of land, if there is nothing special in its objects, subject-matter, or terms, although a certain period of time is stipulated for its completion, or for the execution of any of its terms, equity treats the provision as formal rather than essential, and permits a party who has suffered the period to elapse to perform such acts after the prescribed date, and to

compel the performance by the other party, notwithstanding his own delay."

And in the third volume of the American & English Encyclopedia of Law, the text and note on page 914 asserts:

"If the breach be in a matter which, upon a fair and reasonable construction of the contract, the parties may be deemed to have considered as vital to its existence, or which they have expressly stated shall be vital, it will discharge the promisee from the performance of his promise. In the absence of an express stipulation, a term is considered of vital importance when it goes to the root of the matter, so that a breach of it would frustrate the main object of the contract."

All the authorities agree that where an effort is made to rescind a contract of sale of land on the ground of default in some agreement connected with the sale, that the party seeking the rescission must show that the default was vital, willful and intentional. The bill in this case does not make any such averment.

In this connection, we call the attention of the court to the authorities cited below, which assert the proposition as follows:

"One seeking to rescind a mutual contract of which time is not the essence, on the ground of delay by the other party in complying with its terms, must show either such willful and intentional delay as will evince the intention of the party delaying to treat the contract as at an end, or that the delay has caused such damages as will render a decree of specific performance inequitable and unjust." *Reed* v. *Mix,* 66 Miss., 1021; 63 Kan., 745; 55 L. R. A., 706; 169 N. Y., 583.

*Johnson, Chapman & Neill,* for appellee.

The bill clearly states a failure on the part of the defendants therein to comply with the terms of the contract. They were to put the land in a state of cultivation at the rate of fifty acres per year, so that at the end of the eight-year lease there should

be four hundred acres under the plow.    Appellee, under the contract, had the right to have the stipulated number of acres put in cultivation each year so that he could be assured that at the end of the eighth year, the length of the lease, his half of the land would begin to yield revenue.    The bill shows that only a small part of the required number of acres was put in a state of cultivation in the two years.    This gave appellee the right to rescind the contract.    "The most frequent ground for rescission amongst those arising after the making of the contract is that of nonperformance; in other words, if one party to a contract fails to perform what the stipulations therein bind him to, the other, upon such failure, may rescind.    This applies when the nonperformance is simply a refusal by one to fulfill the contract, or when it arises by reason of his inability to do so."    21 Am. & Eng. Enc. Law (1st ed.), 44; *Johnson* v. *Tuggle,* 27 Miss., 845, 846; *Moak* v. *Bryant,* 51 Miss., 560; *Gullich* v. *Alford,* 61 Miss., 224.

The cases in which a court of equity exercises the jurisdiction to decree the surrender and cancellation of written instruments are, in general, when the instrument has been obtained by fraud, where a defense exists which would be recognizable only in a court of equity, where the instrument is negotiable, and by a transfer the transferee may acquire rights which the original holder did not possess, and where the instrument is a cloud upon the title of plaintiff to real estate.    18 Enc. Pl. & Pr., 750; *Hamilton* v. *Cummings,* 1 Johnson's Chy., 520; 1 Pomeroy's Eq., secs. 110-112.

The chancery court having assumed jurisdiction of this cause its decision on this point is final.    This court will not review the decision of the lower court and pass on the question whether or not the case more properly belongs in a court of law. Constitution of Mississippi, 1890, sec. 147.

Truly, J., delivered the opinion of the court.

Appellee, on the 9th of February, 1903, filed his bill of com-

plaint against appellants seeking to rescind and have canceled
a certain contract of lease and sale for causes set out in his bill.
The facts are these: On the 9th of February, 1901, A. J.
Hannah, being the owner of a tract of wild land containing five
hundred acres, executed a contract of lease and sale to Sibley &
Mortimer. In this contract it was provided that the term was
to expire the 1st of January, 1909, at which time Hannah was
to deed an undivided half interest in the property, conditioned
that his lessees should carry out their part of the contract. In
the contract the said Sibley & Mortimer bound themselves to
put in a good state of cultivation not less than four hundred
acres of land at the rate of fifty acres per annum from the date
of the contract, and agreed to deaden all of said land not put
in cultivation, and to erect twelve houses, as described in the
bill. It will be observed that while the lessees obligated them-
selves to put four hundred acres of land in cultivation "at the
rate of fifty acres per annum," the contract contains no pro-
vision as to when the balance of the land is to be deadened, nor
when the twelve houses mentioned are to be built. By mesne
conveyances the interest of Sibley was conveyed, and is now
vested in the other appellants. The bill of complaint, filed
immediately upon the expiration of two years of the term,
avers: "That none of the defendants have cleared the land at
the rate of fifty acres per annum from date, as stipulated in
said lease. The said defendants have failed to erect any of
the twelve houses, as provided in said contract." Complainant
alleged that at the date of the filing of the bill there was not one
hundred acres of land cleared up and put in a state of cultiva-
tion by any of the said defendants on said land, but only a very
small part of said one hundred acres, and there are no houses
erected at all. Complainant offered to pay defendants any
amount that, on cancellation of contract, the court might think
"suitable and just for the improvements made." The bill fur-
ther states as follows: "Complainant is advised, and so charges

the fact to be, that the said defendants, by their failure to comply with the terms and stipulations of said contract and lease, have forfeited all rights in the said land, and said complainant is entitled to have the said contract and lease canceled, and he be put in possession of the said land." To this bill a demurrer was interposed by the defendants. Demurrer overruled, and defendants appeal, assigning the ruling of the court in the premises as error.

The sole question presented by this record is, Is the appellee entitled to a rescission of this contract under the facts stated? It will be noted that the only breach assigned is that the appellants have not put the land in cultivation "at the rate of fifty acres per annum." No breach is averred as to the "deadening" of the land or the building of the houses, and none could be; for under the terms of the contract these could be performed at any time before the termination of the contract. We have given the matter the careful consideration which the importance of the legal principle involved demands, and after an exhaustive review of all authorities at our command, we formulate and announce as the true rule governing the class of contracts here under discussion the following, viz.: A party to an equitable mutual contract in reference to realty, fairly entered into, has the right to rescind such contract for the following causes: First. When the other party has evinced his intention to abandon or repudiate the contract entirely; and this intention may be shown by express declaration, or by such acts and conduct in reference to the subject-matter of the contract as would prove such intention. Second. When the other party has breached the contract in a matter vital to its existence, or made of the essence of the contract by the terms of the contract itself, or by the evident intention of the contracting parties. Third. When the other party has been guilty of a partial breach of performance, which has inflicted damage upon the one with whom he has contracted, for which no adequate redress can be had, or

which might inflict irreparable injury, or which renders a final completion of the contract according to its terms impossible.

This statement of the rule is in absolute harmony with all previous deliverances of our own court upon the subject, and is supported by the great weight of the most approved authorities and numerous decisions of other states.    In *Moak* v. *Bryant,* 51 Miss., 560, the court says: "The vendee must repudiate the contract under which he entered, or fail to comply with its terms," meaning, of course, in some substantial part of the contract.    In *Gullich* v. *Alford,* 61 Miss., 224, the rule is recognized that the breach must be in some matter which is "of the essence of the contract."    And in *Light Co.* v. *Jackson,* 73 Miss., 642, 19 South., 774, it was held that, while courts were reluctant to grant rescission, still it might be had when adequate damages for breach could not be had at law, or when a partial breach might result in irreparable injury, but that generally rescission would not be decreed unless the breach was one "going to the very substance of the contract."    See, also, Waterman's Specific Performance, sec. 456; Pomeroy's Equity Jurisprudence (2d ed.), sec. 1408; *Reid* v. *Mix,* 63 Kan., 745, 66 Pac., 1021, 55 L. R. A., 706; *Keenan* v. *Brown,* 21 Vt., 86; *Rhymny Ry.* v: *B. & M. T. J. Ry.,* 69 L. J. Ch., 813; *Mixer* v. *Williams,* 17 Vt., 457; *Md. Fertilizing & Mfg. Co.* v. *Lorentz,* 44 Md., 218.    See, especially, *Worthington et al.* v. *Gwin* (Ala.), 24 South., 739, 43 L. R. A., 382, and citations.

Viewed in the light of the foregoing statement of the rule, does the case at bar fall within any of its terms? As to the first, it cannot be contended that the defendants (appellants here) have expressly repudiated the contract, or by act or deed shown any intention of abandoning it; on the contrary, the bill of complaint shows that they were still in possession under the terms of that contract, and it nowhere appears that they were not then engaged in carrying out its provisions.    Nor, in the second place, has the contract been breached in a matter vital

to its existence, or made of the essence of the contract by the terms thereof. The main object of the contract in the case at bar was the clearing and putting in cultivation of four hundred acres, and the building of twelve houses, and the deadening of the remaining one hundred and sixty acres. Manifestly, the essential thing in the minds of the parties was that at the end of eight years this tract of wild land was to have been changed into an improved and cultivated plantation, for their mutual benefit, so that each might share in its enhanced value and revenue producing power. The provision that fifty acres of land were to be put in cultivation each year is simply a statement of proportion — an estimate of the amount to be annually cleared. It nowhere appears that this provision of itself was intended to be considered of vital importance, and it is not made of the essence of the contract by the terms thereof. As a matter of fact, the appellee himself did not so consider it, because the bill of complaint herein avers that, while the defendants have been in possession for two years under the contract, only a very small part of the one hundred acres has been put in cultivation. If this allegation be accurate, then the alleged breach upon which he now claims rescission occurred at the expiration of the first year, and it might be argued with great force that the appellee had waived what he now claims as a breach by allowing the defendants to remain in possession performing on their part the conditions of a contract which he considered at an end. Nor does the allegation of the bill of complaint show that the case falls under the third general clause of the rule as before stated. If it be granted that the appellants have been guilty of a partial breach of performance, it is nowhere intimated that any damage has been inflicted on the appellee, and the facts stated do not warrant the assumption. Even though it be true that at the date named only a small portion of the land had been cleared, it by no means follows that the entire contract may not be subsequently complied with before the date of its

termination.   Nor does the bill of complaint aver that the appellee, if damaged, would not be able to obtain adequate redress for any damage which may have been inflicted upon him.   The bill of complaint does not show appellants' inability to perform the contract, it does not aver that they will not perform the contract, it does not show that they are not able to respond in damages.   We do not think that the facts of this case warrant a court of equity in decreeing a rescission.

The judgment in the court below is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*