No. 23,020

JOSEPH H. YOUNG, doing business under the name of THE YOUNG REALTY COMPANY, *Appellee,* v. J. T. SCHWINT, *Appellant.*

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Contract for Sale of Land—When Decree Will Be Refused.* Specific performance of a contract for the sale of lands is not a matter of course. Performance will be decreed only when, upon all the facts, it is equitable it should be done. (*Fowler v. Marshall,* 29 Kan. 665, Syl. ¶ 1.)

2. SAME—*Facts Justifying Refusal of Decree for Specific Performance.* In an action by the purchaser to compel specific performance of a contract for the sale of real estate, the writings comprising the contract are examined and held to leave it doubtful whether the minds of the parties ever met in respect to the meaning of certain terms, and in view of all the circumstances and the great inadequacy of price, *held,* that specific performance should not be ordered. (*Burkhalter v. Jones,* 32 Kan. 5, 3 Pac. 559; *Shoop v. Burnside,* 78 Kan. 871, 98 Pac. 202.)

Appeal from Decatur district court; CELSUS A. P. FALCONER, judge. Opinion filed February 12, 1921. Reversed.

*J. P. Noble,* and *P. T. Noble,* both of Oberlin, for the appellant.

*A. C. T. Geiger, L. M. Parker,* and *W. S. Langmade,* all of Oberlin, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was for specific performance of a contract for the sale of land. Plaintiff recovered and the defendant appeals. The defendant, a resident of Montgomery county, owned a quarter section of land in Decatur county. The plaintiff is a real-estate agent engaged in business at Oberlin, in Decatur county, and on April 14, 1919, wrote the defendant the following letter:

"*J. T. Schwint, Toronto, Kansas.*

"DEAR SIR: Do you wish to sell your quarter section of land 6 miles North-West of Oberlin, formerly the Teeter land? If so please let us hear from you as to what price you have on the place and what we can rely upon in the way of the commission. Or would you prefer to make us a net price thereon. We have been selling some land this spring and it is quite possible that we can place this land for you and if you will put a price upon it we will lend you our best efforts to do so. Let us hear from you by first mail.          Most sincerely,

                    "THE YOUNG REALTY COMPANY,
                              By JOSEPH H. YOUNG."

The defendant replied by letter as follows:

                              "QUINCY, KANSAS, 4-17-19.
"*To the Young Realty Company, Oberlin, Kansas.*

"DEAR SIRS: Yours of the 14th at hand and contents noted in regard to our quarter of land six miles southwest of Oberlin will say I will take $2,000 net to mee crop and all there is sixty-five acres in wheat of which I get one-half if it is sold soon I will let my half go if not sold in thirty days I will retane my half of the wheat the man that has the wheat in says it is good let me hear from you.          Resp.,

                         "J. T. SCHWINT, Quincy, Kan."

The plaintiff, on April 19, sent the following telegram to the defendant:

"Accept proposition your letter seventeenth two thousand dollars Net to you including your share crop for southeast twenty-eight town three range twenty-nine Decatur County. Will you send deed and abstracts immediately Oberlin National Bank. Wire answer.

                    "THE YOUNG REALTY COMPANY."

On April 20, the defendant replied by a telegram:

"Will send deed and abstract at once."

The day following, the defendant wrote to plaintiff as follows:

"DEAR SIRS your telegram at hand i want a clear understanding so there will bee no after clap now i want $2000 net to me you understand

Young v. Schwint.

the mortgage and all cost off every thing back interest and all you air to assume i to get $2000 in cash net to mee iff this is all O. K. wire mee at once at my Expense i will send deed or you send deed and we will sine it and Return it with abstract          Resp J. T. SCHWINT"

"i dident now wheather you understood the Back interest or not so i wanted to make every thing cleare my half off wheat and all on the farm for $2000 net to me.          Resp J. T. SCHWINT."

This ended the correspondence. On the refusal of the defendant to send the deed and abstract to the bank at Oberlin, plaintiff brought the action alleging that the contract was complete when he accepted the defendant's offer to take $2,000 net and by the defendant's agreement to send the deed and abstract to the bank at Oberlin.

On the trial the plaintiff admitted that he knew there was a mortgage on the farm and it appears that the mortgage was in process of foreclosure at the time of the correspondence. The amount due on the mortgage, including three years' deferred interest and costs, amounted to $1,600. The evidence shows that the defendant's share of the wheat crop on the land amounted to 400 bushels which was worth $1,000 and that the land was reasonably worth $20 an acre.

The trial court made findings to the effect that by means of the letters and telegrams the plaintiff agreed to buy and the defendant agreed to sell to plaintiff, the farm for the sum of $2,000, plaintiff to get defendant's share of the crops for that year, which was one-half, and that the contract was consummated on April 20, as plaintiff claims. The court further found that on April 21, the plaintiff deposited a check in the Oberlin National Bank for $2,000, the proceeds of which were to be paid to defendant without any deduction, upon receiving deed and abstract showing a good and merchantable title; that while no actual tender of the purchase price was made, none was necessary because it would have been useless. Another finding is that the plaintiff adopted the usual and ordinary meaning of the words "$2,000 net to me" and understood and believed he was to pay the defendant that sum over and above all expenses of the sale, and that if defendant had any other understanding of the meaning of those words, the plaintiff was not so informed or advised.

We cannot agree to one contention made by the defendant which is that the correspondence shows that plaintiff was act-

ing as his agent in making the sale. The first letter proposed that plaintiff act as the agent of the defendant in selling the land for the usual commission, but offered defendant the alternative as follows: "or would you prefer to make us a net price thereon." We think the letters and telegrams of the defendant show that he understood plaintiff was acting for himself.

The main contention is that the minds of the parties never met and we think that is the most important inquiry. The contract rests wholly in writing and it is the duty of this court to determine for itself what the parties meant by the language used, in the light of all the circumstances. We are not precluded by the findings of the trial court. (*Belknap v. Sleeth*, 77 Kan. 164, 93 Pac. 580.)

The defendant lived a considerable distance from his land in Decatur county. The plaintiff was experienced in buying and selling land and understood the legal terms and expressions used in contracts with relation thereto. The letters of defendant show that he is a man of little education and indicate that he has not had much experience in business. It seems to be conceded that the land, including the crop, was worth $4,200. The defendant knew that there was a good prospect for a crop as his letters show he had been in communication with his tenant. There is nothing to indicate that there was any danger of the land being taken away from him immediately by the foreclosure proceedings. His share of the wheat was worth two and one-half times as much as he would get for his interest in the land if he is held to the contract as construed by plaintiff. It seems to us more reasonable to hold that the parties' minds never met as to the meaning of the terms "net to me." Defendant's letter, written within a few hours after he had accepted plaintiff's proposition, shows some anxiety that there might be a misunderstanding about what the terms "$2,000 net to me" meant. We do not think this letter indicates that after defendant sent the telegram agreeing to forward the deed and abstract to Oberlin, he changed his mind and concluded to advance his price $1,600.

A court of equity will not enforce a contract which is uncertain and indefinite, or where, from all the evidence there is grave doubt as to whether the minds of the parties really met.

Young v. Schwint.

Even where there has been a mistake as to the terms of a contract, equity will not enforce it, if it is unreasonable, unconscionable, or a hard bargain that ought not to be enforced. In an early case this court decided that:

"Upon breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance. That will be done only when, upon all the facts, it is equitable it should be done." (*Fowler v. Marshall*, 29 Kan. 665, Syl. ¶ 1.)

In another case it was held that while in legal contemplation, two persons may make a contract that would be enforced at law, yet, if it should seem probable from the facts of the case, that the parties did not in fact and equity agree to the same thing, the supposed contract would not be decreed in equity to be enforced specifically. (*Burkhalter v. Jones*, 32 Kan. 5, 3 Pac. 559.) In that case there was an offer to purchase and an agreement to sell land for the sum of $2,000. The court said, however, that in all probability, the vendor at the time did not believe he was making a contract to sell the land for that sum but believed that he was making a contract to sell the land for $2,100. The court below refused to order specific performance and the judgment was affirmed. In the opinion attention was called to the fact that plaintiff had paid nothing for the land as yet, nor had he obtained possession thereof. It was said:

"Indeed, he has lost nothing, or at least the only thing which he has lost is the benefit of what he considers to be a very advantageous contract." (p. 13.)

The opinion recognized that on the facts the case was a close one:

"In strict law, and by the words of the letters of the parties, we think the parties made a contract; but we also think that in fact and in equity, the minds of the parties never came together; that they really never agreed to the same thing; and therefore, in equity and good conscience, they did not make a contract, or at least they did not make such a contract as equity should adjudge to be specifically enforced." (p. 13.)

The case was followed and approved in *Bird v. Logan*, 35 Kan. 228, 10 Pac. 564. In *Shoop v. Burnside*, 78 Kan. 871, 98 Pac. 202, it was said:

"The application is addressed to the sound legal discretion of the court, and courts will be governed by the facts and circumstances of each case. (*Reid v. Mix*, 63 Kan. 745, 66 Pac. 1021, 55 L. R. A. 706;

*Viele v. Troy and Boston R. R. Co.*, 21 Barb. [N. Y.] 381.) Although the proof might come far short of a showing sufficient to authorize the court to grant a rescission or cancellation of a contract, still on the same proof equity will often refuse to compel performance. For instance, a court of equity will not decree a rescission of a contract except for fraud or mistake. Inadequacy, improvidence, surprise and hardship are not sufficient, yet the presence of these, amounting to unfairness, even without fraud or mistake, will prevent a court of equity from ordering performance. While inadequacy of price is not sufficient of itself to avoid a decree for performance, it is a circumstance which will be taken into consideration with all the facts in determining whether a court of equity is called upon to afford relief. The opportunities of parties to know the true situation may always be taken into consideration." (p. 876.)

In support of the well recognized rule that generally equity will not aid a party to enforce in his favor an unconscionable, unreasonable or unfair contract, see Note, 14 L. R. A., n. s., 317. The note cites the case of *Margraf v. Muir*, 57 N. Y. 155, where it is said:

"When a contract for the sale of lands is fair and just and free from legal objection, it is a matter of course for courts of equity to specifically enforce it. But they will not decree specific performance in cases of fraud or mistake, or of hard and unconscionable bargains, . . . or when such a decree would be inequitable under all the circumstances." (p. 158.)

Many additional cases are cited where courts have refused specifically to enforce contracts of this nature on account of inadequacy of consideration even though no such fraud exists as would warrant the cancellation of the contract. In the present case there is, in our opinion, very good reasons to believe that defendant had no thought of making the offer which the plaintiff believed he had made, to accept $2,000 net, over and above merely the cost of the abstract and deed. But, more than that, the inadequacy of price is so great that in our opinion, a court of equity ought not to decree specific performance. It follows that the judgment will be reversed and the cause remanded with directions to enter judgment for defendant.