No. 24,046.

JOHN LYONS, *Appellee*, v. JAMES E. LYONS, *Appellant*.

SYLLABUS BY THE COURT.

1. ORAL CONTRACT—*Care of Aged Parents During Life—Contract Performed—Contract Enforceable.* An alleged oral agreement that a son would remain with and support and care for his father and mother during their lives, in consideration of which the son would become the owner of a tract of land owned by his parents, is held to have been established by sufficient evidence, and it being shown that the son provided and cared for his parents for about thirty years and substantially performed the oral agreement and that the son could not be restored to his original situation or adequately compensated in damages for his services, the oral agreement is taken out of the operation of the statute of frauds and is enforceable.

2. SAME—*Rulings on Evidence—Without Error.* Objections to the admission of certain testimony is held to be without material error.

Appeal from Shawnee district court, division No. 1; GEORGE H. WHITCOMB, judge. Opinion filed November 10, 1923. Affirmed.

*Tinkham Veale, A. E. Crane,* and *B. F. Messick,* all of ·Topeka, for the appellant.

*J. J. Schenck,* and *Clyde P. Schenck,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action by John Lyons against James E. Lyons to set aside a deed purporting to convey land, made by James Lyons, the father of the parties, to James E. Lyons, and to quiet the title of the plaintiff in the land.   Judgment was rendered in favor of plaintiff, and defendants appeal.

Plaintiff alleged that about thirty years prior to the commencement of the action, James Lyons and his wife, the parents of the plaintiff, entered into a verbal contract with him in which they agreed that if the plaintiff would remain at home with his father and mother and attend to the eighty-acre farm which was then the homestead of his parents and look after and care for them in their declining years, that he would become the owner in fee simple of the land.   It was further alleged that in pursuance of the verbal agreement he moved upon and took possession of the farm, looking after and caring for his parents, furnishing them all the necessaries of life and caring for them in their sickness, and had fully complied with the terms and conditions of the contract.   His mother suffered a paralytic stroke and her death followed on the 12th of June, 1917. The plaintiff alleged that James E. Lyons induced his father, who was sick and feeble, then about eighty-eight years of age, to go to Topeka and on the pretext of obtaining a truss or adjusting the one that he was wearing, fraudulently procured his father to execute a deed to the premises conveying a half interest therein to James E. Lyons; that at the time the father was unable to read the instrument or sign his name thereto other than by a mark, and did not know that he was signing a deed to the premises, and that about the same time defendant procured his father to destroy a will executed by the father about six years before that time, giving his property to John Lyons, and that when the will was procured and destroyed his father did not know what was being done, and that the plaintiff did not know that the will was destroyed nor that a deed to the premises had been executed to the defendant until about two years thereafter. When the action was commenced service by publication was obtained upon James E. Lyons, and no answer being filed, a judgment was taken in favor of the plaintiff.   Afterwards the judgment was opened up and an answer was filed by the defendant denying the

allegations of fraud and alleging that the deed was executed by James Lyons when he was of sound mind, and alleging that the instrument was a valid conveyance which vested him with a one-half interest in the real estate. There was a further denial that a contract had been made between his parents and the plaintiff, and that the plaintiff had not cared for his parents as alleged, but on the contrary that defendant and his wife had cared for them a portion of the time. A jury was called to whom certain questions of fact were submitted and answered. They found that the agreement between John Lyons and his parents was made, that the parents at different times had stated to their neighbors their purpose to give the eighty acres in question to John Lyons at the death of the survivor of the two, that John had managed the farm and taken care of the household, that the services rendered by him could not be reasonably compensated in money, that when the father or mother became seriously sick he sent for his brother, James E. Lyons, and that he and his wife came and helped take care of them for a time. In addition to the findings of the jury, the court made a finding that plaintiff substantially performed the agreement entered into between him and his parents, and that when the deed was made John Lyons was living on the premises, farming the same, and was engaged in carrying out the contract between him and his parents.

The principal complaint of the defendant is that the agreement claimed by plaintiff was not supported by sufficient evidence and that the court should have rendered judgment upon the findings in favor of the defendant. There was evidence to the effect that about thirty years ago all the other members of the family, with the exception of a daughter, who died twenty years ago, had left the home, and that an agreement was made that the plaintiff should remain with his parents and care for them as long as they lived, in consideration of which he was to have the farm. About six years before the action was brought James Lyons executed a will expressly giving the property to the plaintiff. After the death of the mother and while the father was sick and in grief at the death of his wife, the defendant procured Robert James and Floyd Banta to take his father to a bank in Delia, Jackson county, where the will had been deposited. The will was obtained from the custodian, and one of them testified that the father had stated that he wanted the paper so that he might destroy it, and desired that another be made out, leaving his property to the plaintiff and defendant. The custodian stated that

if another paper was to be made out it should be done in their own county. Banta, who accompanied James Lyons, said that the old man did not seem to understand what was in the paper, that it was not read to him and the witness did not believe he knew what was in the will. After the will was destroyed the same parties drove to Topeka and went to the courthouse after office hours. They had telephoned to the probate judge to come to the office, and when the judge met them and was told that the purpose was to make a will or deed, the judge declined to do so, and stated that if he desired to make a will he had better bring some of his folks with him. They returned home, and afterwards Robert James and the defendant procured James Lyons to go with them to Topeka where the deed in question was signed by the father with a mark. The plaintiff learned of the trip to Topeka and that a deed or some instrument had been executed and when he asked the defendant about it the following day, the defendant denied that his father had made a deed. When he asked James, who was coöperating with the defendant and had taken the father to Topeka, he also denied that the father had signed any papers. Evidence was offered to the effect that the father had testified on the first trial that he had never signed the deed or knew of signing it. He also stated to a neighbor that he did not know, when he was in Topeka, that he had executed a deed to Jim, "and if he did sign it he wasn't in his right mind or he wouldn't have done it." The evidence of Robert James who took James Lyons to the bank to destroy the will and made two trips with him to Topeka in order to procure the making of the deed, gave contradictory testimony, and evidently it was not credited by the court or jury.

One of the contentions of the appellant is that there was error in admitting testimony as to what the father of the parties had said in a conversation about the disposition of the farm and the making of the deed to the defendant, and also as to his statements in respect to the deed when giving his testimony in the first trial. The statements of the father pertaining to the contract, the performance of it by the plaintiff, and that there had been no intention to repudiate it whether made in or out of court, were admissible. If the agreement was made and there was performance by the plaintiff as found by the court, the matter of the execution of the deed was of little consequence as the father, even if he intended to do so, had no right or power to convey away the land which by the performance of the

agreement had become the property of the plaintiff. In no view that can be taken of the testimony can its admission be regarded as material error.

It is urged that the evidence is insufficient to establish the making of the alleged agreement. Although thirty years has elapsed since the time of the alleged agreement, considerable testimony was produced tending strongly to show that the agreement was made and was frequently spoken of to neighbors by the parents of plaintiff. It is said that such agreements must be shown by convincing proof, but it is enough if, upon substantial evidence supporting the agreement, the trial court has determined its sufficiency. (*Taylor v. Holyfield*, 104 Kan. 587, 180 Pac. 208.) It was also shown that the plaintiff, a single man, remained with the father and mother after the other children had left, working and managing the farm, caring for them in health and sickness, paying all expenses during their lifetime and until he was about sixty years of age. The proof of performance on his part was abundant. While it was an oral agreement the performance of the same was sufficient to take it out of the statute of frauds. A proven parol agreement of this kind which is reasonable in its provisions and has been substantially performed is sufficient to except it from the statute of frauds. To deny plaintiff relief on account of the statute after carrying out the agreement for half of his lifetime, would be to make the statute an instrument of fraud. The personal character of the services rendered, together with the fact that plaintiff put aside his own plans and ambitions and altered his course in life in order to care for his parents under the agreement made it practically impossible to restore him to his original situation or to determine the reasonable value of the services rendered. It has been found by the triers of the fact that adequate compensation could not be made for such services, and under the authorities the agreement may be enforced in equity notwithstanding the statute of frauds. (*Taylor v. Holyfield*, supra, and cases cited.)

The findings of fact warranted the judgment that was rendered, and discovering no error in the record, the judgment is affirmed.