GOLDSTEIN et al. v. POND et al. (POND et al., Interveners).

No. 2742–A.

First Division.   Juneau.

Aug. 19, 1929.

James Wickersham, of Juneau, for plaintiffs and interveners.

Hellenthal & Hellenthal, of Juneau, for defendants.

HILL, District Judge.

This suit was brought by the plaintiffs to compel the defendant E. P. Pond to convey to the plaintiffs certain real estate situated in the town of Juneau in the First division of the territory of Alaska in accordance with a written memorandum of contract signed by said E. P. Pond. The memorandum is set out in full in the complaint, and the defendant Pond admits that he signed it.

Harriet M. Pond and Winter & Pond Company, as interveners, and defendant Pond made affirmative answers to plaintiffs' complaint alleging fraud, unfairness of consideration, and hardship to defendants such as would make the decree prayed for by plaintiffs inequitable, and that, as to defendants Harriet M. Pond and Winter & Pond Company, the contract was void under the statute of frauds, and that the contract was not completed.

The cause came on for trial on November 12, 1928, at Juneau, Alaska, and, after the introduction of evidence, counsel submitted the matter upon briefs.

All through the defendants' brief it is assumed that the proof shows fraud in obtaining the contract. There is reference to the "fraudulent rush act," "old rush act," and "rush trick." I cannot agree that the evidence showed any such condition. The defendant E. P. Pond is the recorded and actual owner of the property he agreed to convey. He is a businessman 56 years of age, apparently very intelligent and successful in a business way. There is no apparent disparity in ability between him and plaintiffs as to education, business experience, or strength of mind. No false representations of any kind were made to him, and the plaintiffs occupied no trust relation as to him. He testified that he had known Mrs. Simpson since she was a little girl, and had great confidence in her and her at-

torney, Mr. Faulkner. So far as the evidence shows, that confidence was justified. The farthest that he went toward sustaining any allegation showing incapacity on his part was saying that he was "not very well" at the time he made this agreement. The undisputed evidence shows that for several months he had had in mind some business arrangement with the plaintiffs which had been the subject of conversation between him and Mrs. Simpson. Three or four days before the execution of the memorandum of agreement upon which this action is based, he had a conversation with Mrs. Simpson in which there was a discussion relative to selling his real property to her and combining their two businesses. At that time Mrs. Simpson indicated to him that she might offer $10,000 for his property, and asked what he would require. Later they had another talk in which apparently they came to an understanding, and thereafter Mrs. Simpson went to Mr. Faulkner, her lawyer, and had him draw a memorandum of agreement embodying her understanding of what she and Mr. Pond had agreed upon. That agreement was submitted to Mr. Pond in the presence of Mr. Faulkner, and there is not one word of testimony to show that it was accompanied by any misrepresentation of any fact or circumstance, or that at that time Mr. Pond in any way indicated that it was not in accordance with his agreement. He signed it, and I think the proof sufficiently shows that he exhibited it to Mr. Winter. Certainly Mr. Winter was present during part of the negotiations. At the time of making the agreement, Mr. Pond received without objection a check for $1,000 in partial payment of the purchase price according to the terms of the agreement. There is no proof that the consideration to be paid under the contract was not ample; neither is there any showing that enforcement of the contract of sale would necessarily work an injury to Winter & Pond Company or to Mrs. Pond, even if they are in a position to raise that question.

This brings me to a consideration of the contract itself. In testing it, I am assuming that the defendants'

statement of general rules of law to be applied is correct. Applying to the contract the tests set forth in section 1405, Pomeroy's Equity Jurisprudence, vol. 4, p. 2768, cited by counsel for defendants, what element does it lack? It sufficiently describes the property to be conveyed. It is a contract for the conveyance of that property from the owner thereof to the persons named, for a definite sum to be paid at a definite time. It is upon a valuable consideration, to wit, $11,000 and the value of certain reserved rights. This court finds that it was reasonably fair, equal, and just in its terms and circumstances, and that the remedy of specific performance will not be harsh or oppressive. A decree for its specific performance would not be nugatory, and the court is able to enforce its decree when made. Thus considered, it fills every requirement of the quoted section. But it is claimed by the defendants that the contract was not completed, and, at the time of the signing, it was agreed "that the parties should meet in Faulkner's office later to conclude their negotiations and write up the completed contract when its terms should be completely agreed upon." I accept Mr. Faulkner's testimony as to what remained to be done as to the contract. He said: "They were to draw up a lease later, I think the next morning, but whether there was to be any further contract for purchase of the building, I don't think anything was said about that."

The principal agreement in this case is for the sale of certain property from defendant H. P. Pond to the plaintiffs. As a subsidiary agreement contained in and a part of the consideration for the principal agreement is the following: "And the said Belle G. Simpson and Minnie Goldstein agree to lease to the undersigned the rooms upstairs in said building now occupied by the said Winter & Pond Company, and also the rooms downstairs now occupied and used by the Winter & Pond Company for developing photographs, for the sum of twenty five dollars per month for a period of five years from date hereof; provided, however, the undersigned shall not transfer said lease on said rooms." It is conceded that no lease was drawn under that

clause in the main agreement. I find the following in Ruling Case Law: "Generally speaking, uncertainty in a subsidiary part of an agreement whose main particulars are sufficiently certain will not prevent a decree for specific performance." 25 R.C.L. 220.

Assuming that certainty is required as to the lease, I think it is still sufficiently certain, and I am not at all sure that it requires any further or other instrument to make it enforceable.

The Circuit Court of Appeals for the Eighth Circuit, discussing agreements to lease and the necessity for certainty therein, says: "It seems to be equally well settled, however, that an agreement for a lease which describes the premises intended to be demised in such a manner as to fully identify them, and specifies the length of time the lease is to run and the amount of rent to be paid either by the month or by the year, is sufficiently complete to be enforced either in equity or by a suit at law, provided the instrument does not disclose that there are other matters which the parties designedly left open for further consideration before the lease was to be executed."

In the case at bar it is indicated that the lease could not be transferred, and the instrument does not disclose that there are other matters which the parties designedly left open for further consideration.

I hold the memorandum of agreement set forth in the complaint to be sufficiently definite and certain and complete to be enforced in equity. No case has been cited to me by counsel for the defendants in which the facts were similar to the case at bar. Perhaps the nearest to it is Young v. Schwint, 108 Kan. 425, 195 P. 614, 615, in which the appellate court held that there was an evident misunderstanding as to the meaning of the words "net to me." and that the minds of the parties never met. Commenting upon a letter of the defendant in that case, the court said: "We do not think this letter indicates that, after defendant sent the telegram agreeing to forward the deed and ab-

stract to Oberlin, he changed his mind and concluded to advance his price $1,600."

I am of the opinion that in the case at bar the defendant Pond, after a fair consideration of a business proposition and after a meeting of minds with the plaintiffs, changed his mind and simply sought to withdraw from his completed agreement.

It is conceded that the rental value of the property in dispute is $150 per month.

The plaintiffs may draw findings of fact in accordance with this opinion and a decree requiring specific performance of the contract and awarding to the plaintiffs damages in the sum of $150 a month from the 1st day of May, 1927. And the plaintiffs will be required to execute to the defendant E. P. Pond a lease for the term of five years from the said 1st day of May, 1927, to the following portion of the building: The rooms upstairs in said building occupied by the said Winter & Pond Company on April 26, 1927, and also the rooms downstairs then occupied and used by the Winter & Pond Company for developing photographs, at a reserved rental of $25 per month, which said lease shall contain a provision against the transfer thereof by the lessee. The plaintiffs will be allowed an attorney's fee of $500 and their costs and disbursements in this action.