No. 35,850

In the Matter of the Estate of Minnie G. Henry, Deceased. (J. B. Henry, *Appellee*, v. Sarah Scurry, Ruth K. Chambers, as Administratrix of the Estate of Minnie G. Henry, Deceased, et al., *Appellants*.)

(142 P. 2d 717)

rehearing filed November 6, 1943. Opinion on (See *In re Estate of Henry*, 156 Kan. 788, 137 P. 2d 222.)

*Austin M. Cowan,* of Wichita, argued the cause, and *E. J. Taggart,* of Wellington, *C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, were on the briefs for the appellants.

*George Siefkin,* of Wichita, argued the cause, and *H. W. Goodwin* and *W. H. Schwinn,* both of Wellington, were on the briefs for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This is a rehearing. The original opinion was filed on May 8, 1943. (156 Kan. 788, 137 P. 2d 222.)

The present question is whether this action for specific performance, if sufficiently maintained, presents a situation which takes it out of the ordinary rule that equity will not specifically enforce an oral contract to devise real property by will when the promisee can be adequately compensated in money for breach of such contract.

Counsel for appellants contend that the rule announced in the syllabus, paragraph 7, and the corresponding portion of our opinion

is too broadly stated, and is not in accord with other decisions of this court pressed on our attention.

In deference to this contention we have reëxamined our own precedents on this question. But, first, to briefly restate the issues: It will be recalled that the oral contract alleged and which plaintiff seeks to enforce was made during harvest time in 1932. It was alleged that the owners of the land involved herein stated to plaintiff at that time that—

"They desired the petitioner, in the future, to take full charge and control of the said real estate and further requested that instead of having them come to Sumner county, Kansas, to make settlement that he come to Boonville, Missouri, to make settlement each year.

". . . that they desired to have for themselves, and the survivor of them, all of the income and profit from the real estate so long as either of them might live; but that if the petitioner would continue to render services to them in the future as he had in the past, that they would so prepare their wills that upon the death of the survivor of them, he, the said J. B. Henry, would receive as payment for services rendered in the past and to be rendered in the future and would become the owner of, by bequest and devise, the following described real property in Sumner county, Kansas, [240 acres described.]"

Plaintiff alleged that he thereupon agreed to perform the specified services, and—

"11. That the said J. B. Henry thereupon stated to Minnie G. Henry and J. S. Henry that the said real estate would constitute ample payment for the services which he had rendered in the past and for the services which he might render in the future; and he further stated to the said Minnie G. Henry and J. S. Henry that he would render the said services to them and to the survivor of them without regard to how long they or either of them might live, and take said land as payment."

Elsewhere in his petition plaintiff alleged that the services which he was to render and did render were those "commonly rendered by an agent to a principal in looking after and managing real estate."

Touching the value of his alleged services pursuant to that oral contract plaintiff testified, "In my opinion, my services were worth $300 a year since 1906."

For present purposes we ignore defendant's timely objection that this testimony by plaintiff pertained to a transaction he had had with deceased persons, in disregard of the civil code, G. S. 1935, 60-2804. And in our first opinion we held that even if the alleged oral contract of 1932 were intended to obligate the promisors for past services, it would be unenforceable to that extent, under another pro-

vision of the code, G. S. 1935, 60-312, which will only allow such an action when the alleged promise has been made in writing.

There was some other testimony touching the value of plaintiff's services but none more direct and positive than his own; and it is obvious that plaintiff's own testimony was accepted as the truth by the trial court, although its computation of their total value was for 36 years instead of 8 years and 10 months—from the making of the contract in August, 1932, until the death of Mrs. Minnie Henry in June, 1941. Three hundred dollars per year for 8 years and 10 months amounts to $2,650, as the monetary value of plaintiff's services which he alleged that he performed under the alleged contract.

The testimony to which the trial court gave credence, and about which there was little dispute, was that the 240 acres of land claimed by plaintiff was worth $42 per acre, "something like ten thousand dollars."

If specific performance should be decreed in this case rather than monetary compensation based upon plaintiff's own valuation of his services under the oral contract of 1932, he will be given judgment in land to the extent of three to four times the value of his services. Before such a judgment could be rendered, a considerable question would have to be disposed of which a court of equity could not ignore. The textbooks and our own cases generally hold that specific performance even of a written contract or where some written memorandum of its acknowledgment is not wanting, will not be enforced unless it is fair and equitable; and that a court of equity will give no aid to the enforcement of hard or inequitable bargains, but will remand the aggrieved party to his action at law or will itself grant damages for the breach. (*Fowler v. Marshall*, 29 Kan. 665; *Bird v. Logan*, 35 Kan. 228, 10 Pac. 564; *Reid v. Mix*, 63 Kan. 745, 66 Pac. 1021; *Shoop v. Burnside*, 78 Kan. 871, 98 Pac. 202; *Young v. Schwint*, 108 Kan. 425, 195 Pac. 614; *Milling Co. v. Waite*, 112 Kan. 809, 213 Pac. 160; *Bowen v. Galloway*, 125 Kan. 568, 264 Pac. 1038 and citations; *Haston v. Citizens State Bank*, 132 Kan. 767, 297 Pac. 1061; Merwin's Equity and Equity Pleading, 407; 25 R. C. L. 221; 58 C. J. 951, 954, 955, 1208.)

Fundamentally it is the frequent inadequacy of an award of damages for breach of contract which supplies the foundation for relief by decree of specific performance—where the consideration

rendered by the promisee cannot be adequately compensated in money. Our own decisions, particularly in respect to the enforcement of oral contracts for the devise of real property, have uniformly recognized this principle.

We have had many cases where the circumstances showed quite clearly that the services promised under the oral contract to devise or convey land could not be adequately compensated in money. Typical of these was *Bateman v. Franklin*, 114 Kan. 183, 217 Pac. 318, the syllabus of which states the facts and the rule of equity applied:

"An oral promise of an uncle and aunt to their nephew, a minor, that if he would come and live with them and render them dutiful obedience and service as their own child until he attained his majority, at the death of the survivor of them they would leave him half their farm or half its proceeds, when accepted and fully performed by the nephew is an enforceable contract against the administrator of the estate of the last surviving obligor, and the statute of frauds is no bar to an action thereon, nor is the statute of limitations a bar thereto if the action is timely begun against the administrator."

In a wide variety of cases, specific performance of contracts concerning land has been judicially upheld, whether the contracts were oral or written, where the intimate and peculiar services rendered by the aggrieved party could not be adequately compensated in money, and where it would be inequitable to withhold specific performance. (*Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743; *Bless v. Blizzard*, 86 Kan. 230, 120 Pac. 351; *Phillips v. Bishop*, 92 Kan. 313, 140 Pac. 834; *Smith v. Cameron*, 92 Kan. 652, 141 Pac. 596, and citations; *Cathcart v. Myers*, 97 Kan. 727, 156 Pac. 751; *Taylor v. Holyfield*, 104 Kan. 587, 180 Pac. 208; *Lyons v. Lyons*, 114 Kan. 514, 220 Pac. 294; *Greiner v. Greiner*, 131 Kan. 760, 293 Pac. 759.)

In most of the cited cases sounding in equity, where specific performance of contracts concerning interests in land was concerned, due consideration has been given to the fact that the land in controversy may have had a peculiar value to the promisee, for example, it might be the family homestead, or land the promisee desired for a home, or land of which he had already taken peaceable possession, or where the promisee had already made valuable improvements thereon. Other instances or circumstances could readily be suggested where compensation in money would be inadequate to redress a well-established breach of contract for an interest in land.

On the other hand, in suits for specific performance of contracts concerning land, this court has never intentionally ignored the pertinent question whether the breach of the contract sued on could be adequately redressed by a money judgment; and if so, and no constraining equities are involved, monetary damages and not specific performance is awarded. In the noted Schindler estate case, *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665, where the action was by claimants under an alleged oral contract for personal services to be rendered by them to Mrs. Schindler, an elderly lady of Wichita, who had promised to execute a will leaving them all her considerable property (except some small bequests), this court reversed a judgment in claimants' favor, saying, in part:

"It is clear from the evidence in this case that all of the services shown by plaintiffs to have been performed for Mrs. Schindler could be readily ascertained and compensated in money. There is no showing that the parties changed in any substantial degree their mode of living after the time it is alleged this purported contract was made. Mrs. Schindler continued to live in her home on Emporia avenue. . . . On one or two occasions Mr. Woltz, who was a carpenter by trade, did a little work about her premises, on the screens or made light repairs. Mrs. Woltz did some sewing for Mrs. Schindler. Whether plaintiffs were paid for these services is not specifically disclosed. They are comparatively trivial in any event. Sometimes when Mrs. Schindler visited the plaintiffs she stayed all night, or for a few days, as did others of plaintiffs' friends who visited them. . . . In 1921 she was ill, but was cared for at a hospital, . . . For three or four weeks before she was taken to the hospital the last time, she was ill at the home of plaintiffs and was cared for by them. Two doctors attended her during that time. Plaintiffs brought out from these physicians that a reasonable charge for the care given Mrs. Schindler by plaintiffs during that time was from $150 to $200 per month. Whether they were paid for that does not appear from the record, but if not, it was the only service of consequence shown by the evidence to have been performed by plaintiffs for Mrs. Schindler aside from the courtesies and civilities exchanged between neighbors and friends; so there would have been no serious difficulty in establishing the money value of services performed by plaintiffs. A proceeding to recover for such services should have been brought in the probate court. (R. S. 22-708.)

"It would be clearly inequitable, as against anyone who had a rightful claim to it, for the court to turn over to plaintiffs property of the reasonable value of $75,000, as found by the court, in payment of services which could be readily estimated in money and which actually amounted to only a few hundred dollars, and which plaintiffs, even when expressing exaggerated views in their petition, did not feel justified in claiming to exceed $15,000.

"Taken as a whole, the record clearly shows that the claim of plaintiffs for all of Mrs. Schindler's property by reason of the alleged contract is not well founded and that it has no merits in equity." (p. 261.)

In *Renz v. Drury,* 57 Kan. 84, 45 Pac. 71, where the action among other matters was for specific performance of a parol agreement to make a foster child an heir, in consideration of her personal services, a judgment of the district court in her favor was reversed by this court, where we said:

"The contract theory of this case, based upon services, comes within the reasoning in *Baldwin v. Squier,* 31 Kan. 283, where it is held that payment of the purchase price does not take such a contract out of the reach of the statute of frauds, because the money can be recovered back by action, and so no fraud will be accomplished if the parol contract is not enforced. In the present case, the value of the services of Virginia from the time that said contract was made until she married was easily ascertainable, and might have been recovered on a *quantum meruit,* . . ." (p. 89.)

The syllabus of the Baldwin case cited in the above case reads:

"Where A., the owner and in possession of a tract of land, made a parol contract with B that if she would come and live with and take care of him till his death he would give her the land, and in pursuance of such contract she came, lived with and took care of him till his death; and where there was no contract in reference to making a will; and where it does not appear that there was any difficulty in estimating the value of B.'s services prior to A.'s death, the same taking place within a year and a half: *Held,* That there was no such part performance as took the case out of the scope of the statute of frauds."

In *Goddard v. Donaha,* 42 Kan. 754, 22 Pac. 708, where a parol agreement had been made between a brother and sister that if the latter would pay the brother's debt to a third person, she might have his interest in certain Marshall county lands. She accordingly paid the debt. No deeds or other memoranda were executed. In an action in partition between persons concerned in the property, it was held:

"A parol agreement to convey land and full payment of the purchase-price, will not alone operate to pass the title thereto where no possession of the land is taken under the agreement, and no memorandum thereof is in writing." (Syl. ¶ 3.)

In the opinion it was said:

"Mrs. Goddard never had any written proof of her title until the deeds were made to her by the other heirs. To be sure, the full purchase-price had been paid, yet without taking possession of the land and making some valuable improvements upon it, or by doing some act which would have placed the purchaser in a position where she could not be restored to her original condition by the repayment of the money with interest, she could not have enforced this contract in an action for specific performance." (p. 757.)

In *Engelbrecht v. Herrington*, 103 Kan. 21, 24, 172 Pac. 715, it was said:

"The general rule is that every parol contract concerning lands is within the statute of frauds and perjuries and unenforceable except where the performance cannot be compensated in damages. The fact that the consideration for the contract was to be paid in services, and not in money, makes no difference in the application of the rule. If the value of the plaintiff's services may be determined and compensation made in money the case is not taken out of the statute. (*Baldwin v. Squier*, 31 Kan. 283, 1 Pac. 591.)"

In *Roberts v. Roberts*, 130 Kan. 85, 92, 94, 285 Pac. 584, where specific performance or a declaration of trust was sought to give redress for a father's breach of contract with his son that the latter should have certain lands of the father for certain stipulated personal services, judgment for the son against the father's executrix was denied. In an opinion by Mr. Justice Jochems it was said:

"As pointed out by the appellee, the evidence does not show that the value of those services was incapable of being definitely ascertained. The decisions (and they are many) which uphold contracts of the nature last indicated, where they relate to real estate are based upon the proposition that the value of the services rendered cannot fairly be measured in money. Whenever the services are of a character that they can be measured in money and recovery had, equity will not enforce such a promise. [citations.]

. . . . . . . . . . . . .

"We have examined the cases decided by this court which compel specific performance where there is an oral agreement to give lands at death or by will in return for services rendered, and so far as we are able to ascertain these decisions are all founded upon the fact that services had been rendered which were of such character that the value thereof could not be readily ascertained or computed in money." (pp. 92-94.)

In *Dent v. Morton*, 148 Kan. 97, 79 P. 2d 875, Mr. Justice Thiele carefully analyzed many of our decisions where specific performance had been granted or approved by this court and where it had been withheld under the rule of the early case of *Baldwin v. Squier*, supra, when there appeared to be no difficulty in estimating the value of the claimant's services in money.

In our most recent case of *Dixon v. Fluker*, 155 Kan. 399, 125 P. 2d 364, specific performance of an oral contract to convey or bequeath certain real estate was denied by the district court and its judgment was affirmed by this court. Two sections of the syllabus read:

"2. Ordinarily equity will not enforce an oral contract with decedent to convey or devise land in return for services rendered where the services are strictly of a business nature and can be compensated with money.

"3. In an action to compel specific performance of a contract with a decedent to convey or devise land the petition is examined, and it is held that the services described in the petition were of a nature which could be compensated with money."

In the body of the opinion is an excerpt from an opinion by the supreme court of Idaho which may restrict the granting of relief by specific performance within narrower limits than this court has hitherto had occasion to consider or declare. Be that as it may, the decision itself was thoroughly sound, and the sections of the syllabus set out above are well-considered statements of pertinent law applicable to that case and to the case at bar.

We therefore conclude that the rule stated in the syllabus, paragraph 7, of our original opinion was too broadly stated, and that the true rule of this jurisdiction is the one which has been repeatedly announced, and never intentionally departed from since *Baldwin v. Squier, supra*, was decided sixty years ago.

HARVEY and PARKER, JJ., dissent.