(590 P.2d 1087)

No. 49,349

SCHAEFER & ASSOCIATES, P.A., a professional corporation, *Appellee,* v. HENRY W. SCHIRMER, *Appellant.*

Opinion filed February 16, 1979.

*Edwin P. Carpenter* of Hiatt, Crockett, Hiatt & Carpenter, Chartered, of Topeka, for the appellant.

*Robert L. Howard* and *James M. Armstrong* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellee.

Before ABBOTT, P.J., SPENCER and PARKS, JJ.

SPENCER, J.: This is an action for a declaratory judgment pursuant to K.S.A. 60-257 and 60-1701. The parties seek a determination of certain of their rights and duties under a corporate shareholders' agreement. Defendant has appealed from the judgment as entered and plaintiff has cross-appealed from that portion of the judgment relating to interest.

Plaintiff is a professional corporation organized pursuant to K.S.A. 17-2706 *et seq.* At the time of organization, Robert J. Schaefer and the defendant Henry W. Schirmer transferred into the corporation all of the assets of a partnership they had previously conducted in exchange for 15,000 shares of the common stock of the corporation issued to each of them. At the same time, 3,000 shares of stock were issued to each of two other persons in exchange for their promissory notes payable to the corporation. Thereafter, others joined the organization under similar circumstances.

On January 5, 1972, immediately after the formation of the corporation, the shareholders entered into a written agreement with the corporation which provided, among other things, that in the event a shareholder becomes disqualified to own shares in the corporation, such individual, within thirty days thereafter, shall sell to the corporation and the corporation shall buy all of the shares of stock owned by such disqualified shareholder at a price to be fixed in accordance with their agreement. The corporate stock was initially valued at $10 per share. It was agreed the shareholders would review that figure and, as determined by an affirmative vote of 75 percent or more of the holders of shares outstanding, would revise it on July 31 and December 31 of each year. It was further agreed that the last amount determined by them in writing prior to a written offer to sell would be conclusive as to the value of the stock for the purposes of their agreement, and that allowances for good will, receivables, and work in progress were to be included in all future stock valuations.

At the stockholders' meeting on July 31, 1974, it was agreed that the value of the stock was then $12.50 per share. Subsequent meetings were held without a different value being established.

Difficulties and tensions developed among the shareholders with the result that on March 29, 1976, defendant elected to

dispose of his stock and offered it to the corporation at $12.50 per share, the last agreed value as reflected by the corporate records. Negotiations were commenced toward the eventual purchase of defendant's stock by the corporation; however, those negotiations were not successful. At a special meeting of the directors held June 3, 1976, defendant was removed as chairman of the board and his employment with the corporation was terminated effective June 30, 1976. On June 11, 1976, defendant surrendered his license as a registered architect in Kansas, and on June 17, 1976, he notified the corporation of his disqualification as a shareholder and demanded purchase of his stock at $12.50 per share.

It was stipulated by the parties that this action is one in which the court has complete equitable jurisdiction; that it is not realistic that defendant and the other shareholders can ever again work as a professional corporation; and that it is in the best interests of all that the matter be finally resolved.

"A court of equity once having acquired jurisdiction of a subject matter will reach out and draw into its consideration and determination the entire subject matter and bring before it the parties interested therein, so that a full, complete, effectual and final decree adjusting the rights and equities of all the parties in interest may be entered and enforced." *Place v. Place,* 207 Kan. 734, Syl. ¶ 3, 486 P.2d 1354 (1971).

The trial judge was asked to fix the "fair value" of the corporate stock within the meaning of K.S.A. 17-2714. Other issues of law and of fact were specified before trial, but it is apparent that fair value of the stock is controlling.

Much of the testimony of the three-day trial concerned the financial status of the corporation, its accounting methods, and accounting procedures that could or should have been used. It was agreed that "good will" had never been included in the capital accounts of the corporation, but testimony revealed that stock value as established by agreement was always in excess of book value.

The court considered the evidence and found, "considering the past practices of the parties in allowing for good will," the fair value of the stock was $7.65 per share. Judgment was entered accordingly.

Defendant argues that the court was required to determine each issue set forth in the pretrial order in logical sequence, and that failure to do so constitutes reversible error. We have examined the decision of the trial court and, contrary to defendant's assertion, find that the issues raised were answered.

Implicit in the court's decision are findings that the shareholders' agreement determined the rights and duties of the parties; that defendant was disqualified as a shareholder; and that the corporation was obligated to purchase defendant's stock. The only part of the agreement for which the court refused to decree specific performance was that portion which would have set the value at the "last amount agreed by them in writing . . . ."

"Whether equity will decree the specific performance of a contract rests in the sound judicial discretion of the court and it always depends upon the facts and circumstances of the particular case." *Hochard v. Deiter,* 219 Kan. 738, Syl. ¶ 1, 549 P.2d 970 (1976).

The court found the contract called for semiannual revaluation of the stock; that such valuation had not occurred for two years; that defendant owed a duty to the corporation to set in motion the machinery to revalue; and that for failure to do so, defendant was not entitled to rely on the last agreed value. Defendant argues that the other shareholders owed the same duty to the corporation and to deny specific performance for that reason unfairly penalizes him. What defendant ignores is that it is he who is attempting to rely on that agreement and not the other shareholders.

The only issue not determined by the court involved the standing of the corporation to raise the defense of impairment of capital, but this issue is of no benefit to defendant and, in view of the decision of the court, was unnecessary.

"Findings as to certain issues may become unnecessary in view of other findings made by the court. Thus, where the finding of a certain fact necessarily controls the judgment, the omission of the court to find on other issues does not constitute reversible error." 76 Am.Jur.2d, Trial § 1253, p. 204.

Defendant challenges the sufficiency of the evidence to support the value placed upon the shares of stock by the court. Where a cause has been tried to the court and findings have been made, those findings will not be disturbed on appeal if supported by substantial evidence. *Landrum v. Taylor,* 217 Kan. 113, 535 P.2d 406 (1975). It is not the function of an appellate court to weigh and sift the evidence, rather this court accepts as true that evidence which supports the trial court's findings and disregards conflicting evidence and other inferences that might be drawn therefrom. *Farmers State Bank of Ingalls v. Conrardy,* 215 Kan. 334, 524 P.2d 690 (1974); *Wehking v. Wehking,* 213 Kan. 551, 516

P.2d 1018 (1973). The record is replete with exhibits and testimony to support the court's determination of book value as of June 30, 1976. The evidence concerning good will shows that this item is the ability of a unit to earn more than a usual rate of return, and that in all probability the corporation's shares could not earn more than the usual rate of return. In view of this, the amount awarded by the court as good will was more than generous and defendant may not complain.

In its conclusions of June 23, 1977, the court entered judgment for the defendant in the amount of $114,750 and provided for interest on the judgment at the rate of eight percent per annum from July 1, 1976. Upon motion to amend, the court modified its judgment to provide for interest at the rate of six percent per annum from July 1, 1976, to June 23, 1977; and provided that, upon tender of all of defendant's shares to plaintiff, plaintiff shall either pay the judgment or the judgment shall bear interest at the rate of eight percent per annum from the date of such tender until this matter is finally disposed of on appeal.

The surrender of defendant's license as a registered architect in this state was accepted on June 17, 1976, and on that same date, defendant notified plaintiff that he was no longer qualified to own shares in the professional corporation. Under date of July 13, 1976, defendant mailed to the corporation his certificate for 15,000 shares of the corporation stock, properly assigned. Under paragraph second of the shareholders' agreement, the corporation was obligated to buy all of the shares of stock owned by its disqualified shareholder within thirty days after such disqualification. By reason thereof, the purchase money was due to be paid the defendant on or before July 17, 1976, and prejudgment interest, if allowable, should run from that date to the date of the entry of judgment.

On cross-appeal, plaintiff has challenged the grant of prejudgment interest, claiming the obligation to pay and the amount owed were uncertain until the decision of the trial court.

As a general rule, prejudgment interest is not allowable on an unliquidated claim; but that rule is qualified in that, where necessary to arrive at full compensation, a court may in the exercise of its discretion award interest or its equivalent as an element of damages, even where the primary claim is unliquidated. *Lightcap v. Mobil Oil Corporation,* 221 Kan. 448, 562 P.2d 1, *cert. denied* 434 U.S. 876 (1977).

The obligation to buy and sell stock in this instance is a matter of contract which could not be specifically performed in its entirety only because the parties to the contract had not undertaken that which they agreed to do, *i.e.,* to revise the value of the corporate stock on July 31 and December 31 of each year. The findings of the trial court were "what is fair to the parties in this case." In an action where specific performance is denied, a court is allowed considerable latitude in making such orders as it sees fit in order to administer equity between the parties. *Zeigler v. Conger,* 204 Kan. 143, 149, 460 P.2d 515 (1969).

We conclude that the court did not err in the allowance of prejudgment interest, except that such interest is not recoverable for any period prior to the date payment of the purchase money would have been due under the contract.

Defendant contends the court erred in not granting post-judgment interest from June 23, 1977, and we agree, for that is the date judgment was entered. K.S.A. 16-204.

Plaintiff argues that post-judgment interest should not be assessed under the circumstances of this case. Plaintiff points to decisions from other jurisdictions which hold that a judgment creditor who unsuccessfully challenges the adequacy of his award is not entitled to interest during the pendency of the appeal. *Quality Molding Co. v. American National Fire Ins. Co.,* 287 F.2d 313 (7th Cir. 1961); *Jesser v. Mayfair Hotel, Inc.,* 360 S.W.2d 652 (Mo. 1962); *Arley v. Liberty Mut. Fire Ins.,* 81 Nev. 411, 404 P.2d 426 (1965).

K.S.A. 16-204 provides that all judgments are to bear interest. Other jurisdictions with similar statutes have held that due to their statutes, even an unsuccessful challenge by a judgment creditor will not dispense with the accrual of interest on appeal. If the judgment debtor wishes to avoid the accrual of interest on appeal, he must tender the amount of the judgment or pay the amount into court. *Henley v. Mabry,* 125 Ga. App. 293, 187 S.E.2d 309 (1972); *Phillips v. Mills,* 14 Md. App. 272, 286 A.2d 798 (1972).

The trial court offered plaintiff the opportunity to avoid the accrual of interest on appeal by making payment into court, with appropriate orders directing that such would not constitute an acquiescence. Plaintiff did not avail itself of that opportunity.

Under our statute, interest on the judgment must therefore continue to accrue until it is paid.

We hold that the court did not err in granting both prejudgment and post-judgment interest; however, the judgment of the trial court should be modified to provide for interest on the judgment at the rate of six percent per annum from July 17, 1976, to June 23, 1977, and at the rate of eight percent per annum from June 23, 1977, until paid. As so modified, the judgment is affirmed.