(629 P.2d 752)

No. 52,064

MELLIE B. JENSEN, Executrix of the Estate of K. R. Jensen, Sr., MELLIE B. JENSEN, EFFIE JO WADE, BERNARD L. WADE, K. R. JENSEN, JR., a/k/a KRESTEN RAY JENSEN, *Plaintiffs-Appellees,* v. SOUTHWESTERN STATES MANAGEMENT CO., and MISSOURI-KANSAS-TEXAS RAILROAD CO., *Defendants-Appellants.*

Petition for review denied September 18, 1981.

Opinion filed June 12, 1981.

*John B. Markham,* of Parsons, for appellants.

*Aubrey Neale,* of Neale & Neale, of Coffeyville, for appellees.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: This suit was filed as one to quiet title to land owned by plaintiffs except for mineral rights to coal underlying

the land. Defendants owned the mineral rights through six mineral deeds, each over fifty-five years old. In five of the six mineral deeds there were clauses giving the grantee the right to use the surface also, upon payment of $70 or $75 per acre. The trial court held that the price for use of the surface was now inequitable and that should defendant exercise its option to take any surface, it must pay the reasonable value at the time of its use. Defendant Southwestern States Management Company appeals from that part of the decision. We affirm.

Southwestern States Management Company is now the only defendant. It is a subsidiary of the Missouri-Kansas-Texas Railroad Company, which was abandoning a right-of-way over part of this land. There was originally a controversy over the time personal property should be removed from the right-of-way, but that was disposed of before this appeal was heard. The only issue now relates to the clauses giving the defendant an option to use of the surface. The defendant states two issues to be decided on this appeal.

"POINT I. Did the Trial Court commit reversible error in its judgment that appellant's deeds to the coal, purchased in 1925, providing for payments of $70.00 to $75.00 per acre for use of the surface, are unenforceable as the same has not been exercised in a reasonable time; that they are indefinite as to the land to be taken, and inequitable as to price at this time?

"POINT II. Did the Trial court commit reversible error in its judgment that at any time defendant-appellant Southwestern States Management Co., a Missouri corporation, desires to mine for coal on plaintiffs-appellees' land, that said party shall pay the market value for the land when taken for use by defendant-appellant?"

Plaintiff's land is a ranch in southwestern Labette County of about 2,040 acres. The six deeds involved cover about 880 of those acres. The original deeds were all executed over 55 years ago; this defendant obtained its conveyance in 1962. There is no dispute that the original deeds and the deeds that follow them are effective to convey to the defendant the coal underlying the 880 acres. No coal, however, has ever been mined and there was no showing of any present intent to mine.

Because no use of the deeds by defendant has been shown, the defendant argues in its brief that there is no controversy and no decision adverse to the defendant should have been entered. It also argues that it was error for the trial court to, in effect, convert a petition to quiet title into a suit for declaratory judgment.

In the trial court proceedings, in the briefs filed in this court,

and during oral argument it appears to be conceded that the plaintiffs were attempting to sell this ranch but the prospective purchaser could not obtain a commercial loan so long as it appeared of record that 880 acres might be taken from the purchaser upon payment of $70 per acre for part and $75 an acre for the rest.

The point relative to there being no actual controversy appears to be adequately answered by *Woolums v. Simonsen,* 214 Kan. 722, 522 P.2d 1321 (1974), which was a quiet title action to determine what, if any, rights some future beneficiaries might have under a will. The claim of no present controversy was raised. At page 729, the court stated:

"The statute specifically recites that no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is the only relief requested.

"Furthermore under K.S.A. 60-1002 a quiet title action may be brought by any person claiming an interest in real property against any person who claims an interest therein adverse to him, for the purpose of determining such adverse claim."

The pretrial order in this case states that the plaintiffs claimed the only issue was whether the $70 and $75 per acre provisions were valid and the defendant agreed the question was whether those prices were a binding contract.

Syllabus paragraph 5 of *Woolums* states:

"As a general rule the courts will not give a construction to or declare the rights of parties upon a state of facts which has not arisen, nor upon a matter which is future, contingent, and uncertain, unless a present right depends upon the decision or there are other special circumstances to satisfy the court that it is desirable at once to decide on the future rights." 214 Kan. at 722.

The position these plaintiffs found themselves in would be as much a "special circumstance" as that faced by the devisees and legatees in *Woolums.*

There are two additional reasons that defendant's position on these matters is not well taken. First, a position not raised in the trial court may not be presented on appeal. *Fleming v. Etherington,* 227 Kan. 795, Syl. ¶ 7, 610 P.2d 592 (1980). Second, the pretrial order was apparently agreed upon by the parties.

"When a pretrial order is agreed on by the parties and followed by the trial court in deciding the issues as set forth in the order, the parties have acquiesced therein and cannot enlarge those issues on appeal. Such an order when entered controls the subsequent course of the action, unless modified at the trial to prevent

manifest injustice." *Country Club Home, Inc. v. Harder,* 228 Kan. 756, Syl. ¶ 1, 620 P.2d 1140 (1980), *modified* 228 Kan. 802, 623 P.2d 505 (1981).

Having concluded the trial court properly proceeded by way of a declaratory judgment, we turn to the language of defendant's conveyances. The trial judge held that the purchase of surface rights would have to be exercised in a reasonable time and 55 years was too long to qualify as reasonable. He also held the deeds were indefinite as to land that could be used. While we arrive at the same final conclusion as the trial judge, we do so by a slightly different route.

Two of the deeds provided the grantee could use "so much of the surface . . . as he may desire." One deed called for "such part of the surface of the land . . . as he may desire." One limited the use to "such part of surface not under cultivation." One provided the surface was to be taken "along the boundry [*sic*] . . . or along the M.K.&T. Right of Way." We are not concerned with the sixth deed as it called for paying appraised value at the time of taking. No time limit was set in any deed.

Except for the deeds that called for uncultivated land to be used or the taking to be along the boundary or railroad right-of-way, all deeds covered the full acreage above the coal minerals conveyed and appear to satisfy any specificity requirements as to surface land that could be taken.

The deeds, however, did leave to the choice of the grantee whether it would take any surface at all. If this right is classified as a legal option it would be completely void or, according to the holding of some courts, void unless exercised within a reasonable time. See *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 550-51, 183 P.2d 947 (1947); *Campbell v. Warnberg,* 133 Kan. 246, 299 Pac. 583 (1931); 77 Am. Jur. 2d, Vendor and Purchaser § 42; Annot., Option Created by Will, 44 A.L.R.2d 1214. It would come within the operation of the rule against perpetuities as an unreasonable restraint on alienation. *Beverlin v. First National Bank,* 151 Kan. 307, 98 P.2d 200 (1940); *Beloit Bldg. Co. v. Quinn,* 145 Kan. 507, 66 P.2d 549 (1937); Annot., Perpetuities—Independent Option, 66 A.L.R.3d 1294, 1300; Annot., Perpetuities—Pre-emptive Rights to Realty, 40 A.L.R.3d 920.

The plaintiff relies upon *Audo v. Mining Co.,* 99 Kan. 454, 162 Pac. 344 (1917), which we find to be similar as to controlling

facts. The principal difference is that *Audo* involved a reservation of a repurchase right by the mining company, as distinct from an original purchase right held by the defendant in this case.

In *Audo,* the defendant reserved the right to repurchase "all or any portion of the premises conveyed" by paying the average price per acre paid when the first transaction was made. When the plaintiff brought suit contesting the validity of the reservation, the mining company tendered a sum measured by that average price per acre and cross-petitioned for specific performance. The cross-petition was denied, apparently because of time lapse only, as the court stated:

"More than ten years elapsed between the execution of the deed and the commencement of this action. The deed fixed no time within which this option to repurchase by the defendant was to be exercised. Under these circumstances that option should have been exercised within a reasonable time." 99 Kan. at 461.

While an option contract for use or purchase of land at some indefinite time is either void as violating the rule against perpetuities or valid only if exercised within a reasonable time (see *Campbell,* 133 Kan. at 250), the same may not be said of an option created by lease or deed. The reason for this is stated in 54 Am. Jur. 2d, Mines and Minerals § 210, p. 389, "[U]nless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use as much of the surface as may be reasonably necessary to reach and remove the minerals."

Accordingly, it would follow that when this defendant acquired the coal in place, it also acquired the right to use any surface necessary to remove the coal without need of that right to be defined in the deed. That right, of course, could only be exercised by paying fair compensation for surface use. As far as this record shows the $70 or $75 per acre would have been adequate at the time the deeds were executed.

While it might seem that court decisions overreach when construing deeds to underlying minerals as carrying also the right to use necessary surface to recover the minerals, this construction is really nothing more than an attempt to practically implement the extent of the ownership of the two owners. It attempts to insure that each owner may, practically speaking, enjoy and profit from his ownership.

A question arises as to whether such use of surface as is

implied, without being specifically provided for in the conveyance, may be extended by terms of the grant in the deed. It is obvious that extension impairs the equalization of rights of enjoyment to the detriment of the surface owner. Some states have held that "surface necessary to remove the coal" is all that may be provided for even if the conveyance, by its terms, would indicate otherwise. For example, Colorado in *Fuel Company v. Heflin,* 148 Colo. 415, 366 P.2d 577 (1961), held the option in a deed to "repurchase any part of the surface necessary to carry on mining operations" plus "up to 30 acres" for housing as void in view of the rule against perpetuities. Similarly, in *Middleton v. Western Coal and Mining Company,* 241 F. Supp. 407 (W.D. Ark. 1965), the court held a deed clause granting the right to take overlying surface at an amount to be reached by arbitration if not by agreement was not limited to what was necessary to recover minerals, and was therefore void for the same reason. A similar decision was reached in *Coal Company v. Strong,* 129 W.Va. 832, 42 S.E.2d 46 (1947), where the grant covered the land above the coal conveyed and it appeared the coal company wanted to purchase in order to strip mine. In like manner, *Skivolocki v. East Ohio Gas Co.,* 38 Ohio St. 2d 244, 249, 313 N.E.2d 374 (1974), by way of dicta indicated it would hold a surface option invalid if it involved a taking for strip mining rather than for deep mining. The court noted that strip mining causes "total disruption of the surface estate." It felt this was not consistent with one party enjoying the mineral estate and the other enjoying the surface estate.

Relative to the above cases, it is common knowledge that Southeastern Kansas has been the locale of both deep shaft and strip mining. The record here gives us no indication of which might be intended under the deeds in this case. Since the appellees here have not cross-appealed to claim the deeds are void as to surface use, but, instead, merely request affirmance of the decision of the trial court as to price per acre, we conclude they concede the deeds are not void as to conveyances of surface use. We pass no judgment about this area of law. The reach of our decision is limited to the issues as framed on appeal rather than all issues that might have been raised.

In *Quarto Mining Co. v. Litman,* 42 Ohio St. 2d 73, 326 N.E.2d 676, *cert. denied* 423 U.S. 866 (1975), the mining company sought

specific performance of surface purchase provisions in two 1906 deeds to coal under the defendant's land. One deed provided for payment of $100 per acre of surface when taken and the other called for $200 per acre. The deeds contemplated underground mining and covered surface for mining, ventilating, draining, and transporting coal from other lands. We consider the case to be in point as to all issues before us. The Ohio court held: (1) The description of surface that could be acquired was not so indefinite that specific performance should not apply; (2) the grant of the reasonable use of surface constituted a vested part of the mineral estate rather than a non-vested contingent equitable interest; (3) neither $100 nor $200 per acre was fair compensation in 1975 and specific performance was conditioned upon payment of the actual value of any acres taken.

To condition a grant of specific performance upon paying an adequate price rather than a price set before the value of money has eroded by inflation is common. 71 Am. Jur. 2d, Specific Performance § 88, p. 120. Of many circumstances calling for a price adjustment in cases, the following are noted: The contract price would work a hardship not within contemplation of the parties at the time of making the contract. *Munchak Corp. v. Caldwell,* 46 N.C. App. 414, 265 S.E.2d 654 (1980), *aff'd as modified* 301 N.C. 689, 273 S.E.2d 281 (1981). When specific performance is denied, the court is allowed considerable latitude in making orders to obtain equity between the parties. *Schaefer & Associates v. Schirmer,* 3 Kan. App. 2d 114, 590 P.2d 1087 (1979). Specific performance is properly denied when land is worth about $1,000 or $1,500 per acre and the contract price is only $361.72. *Hodge v. Shea,* 252 S.C. 601, 168 S.E.2d 82 (1969). A contract will not be specifically enforced if it "drives too hard a bargain for a court of conscience to assist." *Campbell Soup Co. v. Wentz,* 172 F.2d 80 (3rd Cir. 1948).

Under the pretrial order the issue to be determined was whether, if defendant ever decided to use the surface, it could do so by paying $70 to $75 per acre, or whether it would be required to pay the current market value. We think the latter was the appropriate decision by the trial court.

Affirmed.