(638 P.2d 985)
No. 52,610

Estate of Marie Deutsch Link, Deceased, *Appellee,* v. Jerome A. Wirtz, *Appellant.*

Petition for review denied March 3, 1982.

Opinion filed January 14, 1982.

*Kent Roth,* of Hagen, Bates & Suelter, of Great Bend, for the appellant.

*Larry E. Keenan,* of Keenan, Mauch & Keenan, P.A., of Great Bend, for the appellee.

Before Justice Herd, presiding, Swinehart, J., and Lewis L. McLaughlin, District Judge Retired, assigned.

Swinehart, J.: This is an appeal by defendant Jerome A. Wirtz from the judgment of the District Court of Barton County which reformed the rental rate provision of a lease.

On January 3, 1958, defendant Wirtz entered into a real estate lease with D. F. Deutsch. At the time Deutsch was eighty-four years old and had, because of a previous stroke, given a granddaughter, Mary Sue Gillen, his power of attorney. Deutsch did not consult with Gillen prior to making the lease with defendant. The terms of the lease provided for a tract of land to be leased to

defendant for a period of twenty years, commencing March 1, 1958, at an annual rental of $200 per year with an option to renew at the expiration of the twenty years for an additional twenty years under the same terms and conditions.

Deutsch died in 1966 and had conducted his own business until six months before his death. Upon his death the land went to Marie Deutsch Link, Deutsch's daughter. In 1967 defendant Wirtz filed a copy of the lease in the public records.

Prior to March 1, 1978, defendant gave notice to Link that he was exercising his option to extend the term of his lease for an additional twenty years. Link did not agree to this extension and the rental for the first renewal period of the twenty-year extension was rejected. Link died on October 17, 1978, and this action to void or reform the lease was filed by executrixes of her estate. Plaintiff sought in equity to void the lease because it was made when M. F. Deutsch was old and allegedly unable to conduct his own business. Plaintiff also alleged undue influence and unconscionability.

At pretrial the parties made the following stipulation:

"That on the date this lease was entered into for the property intended to be conveyed the agreed rental rate of $200.00 a year was a reasonable and conscionable rental rate."

Defendant moved for a directed verdict at the conclusion of plaintiff's evidence. The trial court granted the motion and made the following findings:

"1. That from the evidence introduced and from the answers to interrogatories in the file, the Court finds that the evidence does not support a claim that at the time the lease was made in 1958, D. F. Deutsch was unable to know and understand the general type of business involved in the lease, and that the evidence also is lacking to support a finding that there was improper influence brought to bear on Mr. Deutsch relative to the making of the lease.

. . . .

"3. The Court finds that the twenty (20) year extension period of the lease is valid and that it does not violate the rule against perpetuities. However, the Court finds that as a matter of equity the lease should be reformed as to rental. That during the base twenty (20) year lease period no reformation is to be made, but that for the second twenty (20) year period, the rental called for in the lease is unconscionable."

The trial court then ordered an appraisal of the land to determine the fair market value of the lease. At trial, plaintiff had not offered any expert testimony concerning the fair market value of

the lease. Defendant's motion for a new trial was denied and he was ordered to appoint an appraiser. The appraisal from a panel of three appraisers set the fair market rental per year for the property at $720.

Defendant appeals from the trial court's finding of unconscionability. He also maintains that the trial court's adverse ruling was made without affording defendant an opportunity to take the stand and present evidence as to the merits of the case.

Defendant's primary contention on the unconscionability issue is that the trial court used the wrong time frame when determining whether the rental provision in the lease was unconscionable. Defendant maintains that the common law doctrine of unconscionability looks to the time the contract was made to determine if the parties were in fact exercising their freedom to contract. The leading pronouncement on the doctrine of unconscionability in Kansas is *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 549 P.2d 903 (1976). *Wille* was an action to recover damages for negligence or breach of contract from a telephone company for an omission in the yellow pages of a telephone directory when the contract entered into by the parties limited the company's liability for errors or omissions. Plaintiff Wille contended that the exculpatory clause was unconscionable and therefore should not be enforced. The court in *Wille* noted that the doctrine of unconscionability in the area of private contract has come into Kansas law by four statutory enactments: K.S.A. 16a-5-108, Uniform Consumer Credit Code; K.S.A. 50-627, Consumer Protection Act; K.S.A. 58-2544, Residential Landlord and Tenant Act; and most importantly, K.S.A. 84-2-302, Uniform Commercial Code. The court stated at 757-58:

"Although the UCC's application is primarily limited to contracts for the present or future sale of goods (K.S.A. 84-2-102; 84-2-105), many courts have extended the statute by analogy into other areas of the law or have used the doctrine as an alternative basis for their holdings."

The court then proceeded to use 84-2-302, the UCC unconscionability section, as a guide in a non-UCC case. We likewise use statutory unconscionability provisions as a guideline.

The basic issue on appeal here is to what point in the contractual relationship should a trial court look to determine whether a contract is unconscionable. A review of the statutes cited above reveals a clear answer: at the time the contract was made.

K.S.A. 84-2-302 reads in part:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract . . . ." (Emphasis supplied.)

K.S.A. 16a-5-108 reads in part:

"(1) With respect to a consumer credit transaction, if the trier of fact finds
"(*a*) the agreement to have been unconscionable *at the time it was made,* or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
"(*b*) any clause of the agreement to have been unconscionable *at the time it was made,* the court may refuse to enforce the agreement . . . ." (Emphasis supplied.)

The most analogous statute is K.S.A. 58-2544, the unconscionability provisions in the Residential Landlord and Tenant Act. It reads in part:

"(*a*) If the court, as a matter of law, finds: (1) A rental agreement or any provision thereof was unconscionable *when made,* the court may refuse to enforce the agreement . . . ." (Emphasis supplied.)

The court, in *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. at 759-60, stated the purpose for the doctrine of unconscionability:

"[T]he doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain (1 Anderson on the UCC, § 2-302.11, p. 401)."

As was noted above, the trial court in this case found, as was stipulated, that the rental provision was conscionable when made. The mere passage of time made the rental term appear to be unfair. Apparently time had turned this lease into a bad bargain. Despite the general rule that the trial court will look to the circumstances as they existed at the inception of the contract rather than in the light of subsequent events to determine whether the agreement is conscionable, a court is not powerless in equity to remedy that which it perceives as present unconscionability.

Although this case deals with a party seeking to have the court reform a contract, the rules concerning specific performance of contracts are applicable. In its discussion concerning specific performance of contracts, C.J.S. states:

"Specific performance of a contract is never decreed when its enforcement

would be inequitable or unconscionable, or produce injustice or hardship, or where the specific performance of the contract would operate oppressively as to either party, even though there is no sufficient ground for rescission or cancellation. . . . Equity will not assist a party seeking to enforce a hard bargain. The fact that the inequity arises from provisions of the contract or the performance thereof, or from external facts or circumstances is immaterial. The harshness or oppression which would entail sufficient ground to deny specific performance need not arise from fraud, mistake, or accident in the making of the contract.

"The foregoing rules are nevertheless subject in their application to some limitations that arise out of the facts of particular cases. The rule against specific performance has been said to apply only where the consequences of enforcement cannot be deemed to have been contemplated by the parties when the contract was made. Hence, hardship, fairly and voluntarily assumed as a part of the contract sought to be enforced, cannot prevail to stay a specific performance thereof, and a bad bargain, in the absence of fraud, will not relieve a party from specific performance." 81 C.J.S., Specific Performance § 20, pp. 737-740.

In *Jensen v. Southwestern States Management Co.*, 6 Kan. App. 2d 437, 629 P.2d 752, *rev. denied* 230 Kan. 818 (1981), this court applied the foregoing rules. The defendant in *Jensen* owned mineral deeds, each over fifty-five years old. In five of the six mineral deeds, which were purchased in 1925, there were clauses giving the grantee a lifetime option to also use the surface upon payment of $70 or $75 per acre. The six deeds involved covered about 880 acres of Jensen's 2040 acre ranch. This court affirmed the trial court's holding that the price for use of the surface was now inequitable in light of the specific facts and that should the defendant exercise its option to take any surface, it must pay the reasonable value at the time of its use. *Jensen,* 6 Kan. App. 2d at 438.

The facts in *Jensen* appear to be amenable to the use of the equitable theory employed by the trial court to reform the lifetime mineral deeds. A review of the record in the present case, however, leads us to a contrary conclusion. The lease in question was entered into in 1958. The economic climate in the 1950's, especially after the postwar recovery from the great depression, was such that it would be reasonable to assume that the parties to this twenty year lease, which provided for an option for an additional twenty years, contemplated with certainty that the value of the lease property would increase over the twenty or forty year period. Indeed, there is no evidence which suggests otherwise. The record further reveals that no real hardship or injustice would result from the enforcement of the lease. The rental provided for in the lease is $200 per year. The co-executrix of Mrs.

Link's estate testified that in her opinion a fair rental would be $500 per year. As was stated above, the lease was appraised after the trial court rendered its decision and it was determined that the fair market value of the lease is $720 per year. It is our conclusion that the lease turned out to be merely a bad bargain, and does not rise to the level of unconscionability, the enforcement of which would not result in an uncontemplated hardship or injustice necessitating equitable reformation. Therefore, it was error for the trial court to reform the lease in equity.

In *Squires v. Woodbury,* 5 Kan. App. 2d 596, 621 P.2d 443, *rev. denied* 229 Kan. 671 (1981), this court was presented with a case which also concerned the reformation of the terms of a written lease. Although the issue of unconscionability was not specifically dealt with, this court did state:

"The general rule is that competent parties may make contracts on their own terms, provided such contracts are neither illegal nor contrary to public policy, and in the absence of fraud, mistake or duress, a party who has entered into such a contract is bound thereby." *Squires v. Woodbury,* 5 Kan. App. at 598.

We find that the general rule as stated in *Squires* is properly applicable to the present case, and therefore the trial court's decision is reversed. To find otherwise would allow the trial court to unjustifiedly rewrite the parties' lease.

The resolution of the first issue makes defendant's second contention of error moot.

Reversed with instructions to enter judgment in favor of defendant.

McLAUGHLIN, J., dissenting. The trial court held it would be unconscionable to extend the lease for an additional twenty years at the same rental rate. One definition of unconscionable, found in The Random House Dictionary 1541 (1966), is ". . . not in accordance with what is just or reasonable . . . ."

Generally, mere inadequacy of price or a change in the value of property from the date the parties entered into the contract to the time of the action will not preclude enforcement of the contract as inequitable. *Hochard v. Deiter,* 219 Kan. 738, 742, 549 P.2d 970 (1976); *Sutherland v. Sutherland,* 187 Kan. 599, 605, 358 P.2d 776 (1961); *Torluemke v. Abernathey,* 174 Kan. 668, 670, 258 P.2d 282 (1953); *Greenwood v. Greenwood,* 96 Kan. 591, 594, 152 Pac. 657 (1915); *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270 (1910). Many

opinions state the rule that inadequacy of consideration *by itself* does not amount to sufficient justification for preventing specific performance. See *Sutherland v. Sutherland,* 187 Kan. at 605; Annot., 11 A.L.R.2d 390, 406; 81 C.J.S., Specific Performance § 20, pp. 741-742; 5A Corbin on Contracts § 1165 (1964); 11 Williston on Contracts § 1428 (3rd ed. 1968); 71 Am. Jur. 2d, Specific Performance § 83, pp. 112-113.

A consequence to the foregoing is the rule that inadequacy of price is considered as of the date the parties entered into the contract and the circumstances then existing, not in the light of subsequent events. *Eakin v. Wycoff,* 118 Kan. 167, 174, 234 Pac. 63 (1925); 81 C.J.S., Specific Performance § 47, p. 824; 71 Am. Jur. 2d, Specific Performance § 81; 11 A.L.R.2d at 397. See *Haase v. Richmond,* 570 S.W.2d 341 (Mo.App. 1978), applying these two rules to specifically enforce a lease purchase option.

Kansas cases, however, recognize that a court of equity may refuse specific performance if the consideration given for the agreement is so inadequate that it works a substantial hardship on one of the parties or if enforcement of the agreement would be unjust. *Hochard v. Deiter,* 219 Kan. 738; *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 550-551, 183 P.2d 947; *Young v. Schwint,* 108 Kan. 425, 430, 195 Pac. 614 (1921). In *Sinclair* the court specifically cited and approved the Restatement provision which in its current form reads:

"(1) Specific performance or an injunction will be refused if such relief would be unfair because

. . . .

"(c) the exchange is grossly inadequate or the terms of the contract are otherwise unfair." Restatement (Second) of Contracts § 364 (1981).

11 A.L.R.2d at 399 states:

"Despite the general rule that in determining the right to specific performance, the court will look to the circumstances as they existed at the inception of the agreement rather than in the light of subsequent events, many of the cases contain statements recognizing that where such a change of circumstances has taken place that specific enforcement would work peculiar hardship, equity may refuse to grant that remedy."

And, more specifically, at 411:

"Although the majority of the cases support the rule that an increase in the value of the property, standing alone, will not justify the denial of specific performance, occasional holdings and dicta may be found supporting a contrary rule, especially where the accompanying circumstances suggest unusual hardship."

The important inquiry in the present case is whether there was such a drastic change in circumstances, which could not have been foreseen by the parties at the time the lease was executed, as to require the intervention of a court of equity when the time for the option to renew the lease arrived. The lease was executed on January 3, 1958, for twenty years at a rental rate of $200 per year with an option to renew for an additional twenty years on the same terms. It must be remembered that in 1958 and for some years thereafter the country was enjoying a stable economy and a very modest inflation rate. It would be beyond the comprehension of reasonable persons at the time of the execution of the lease to expect that by the time the first twenty years had expired, the country would be experiencing runaway inflation and skyrocketing real estate values with a corresponding increase in taxes.

81 C.J.S., Specific Performance § 20, states:

"*Subsequent events or a change in conditions which the parties cannot reasonably be supposed to have had in mind when the contract was made, and which work a hardship on defendant, have frequently furnished a sufficient reason for refusing specific performance.* On the other hand, specific performance of the contract will not be refused because of difficulties or hardships caused by subsequent events or changed circumstances where these were or should have been within the contemplation of the parties as possible contingencies when they entered into the contract. Where neither party is at fault in the matter, the changed circumstances must directly affect the subject matter of the contract before the hardship caused thereby will be held to excuse specific performance." (Emphasis supplied.) p. 741.

5A Corbin on Contracts § 1162, pp. 207-11 (1964), states:

"*There are cases, also holding that facts subsequent to the making of the contract, unforeseen by the parties, affecting values of property or of the consideration given, may be considered, and that specific performance may be refused except upon adjustment of payments in accordance with new facts.* The remedy should not be refused, however, merely because of the rise or fall of market values that is within the usual contemplation of contractors and the risk which is usually intended to be assumed when the contract is made. Specific performance will not be refused merely because the contract turned out to be a losing one.

"Specific performance should seldom be refused on the ground of changed conditions if nothing has occurred since the making of the bargain that was not within the actual contemplation of the parties when they were bargaining." (Emphasis supplied.)

71 Am. Jur. 2d, Specific Performance § 82, states:

"Many cases may be found stating that, as a general rule, in determining the availability of specific performance to enforce a contract, equity will view the fairness or equity of the agreement in the light of the facts as they existed at the

inception of the contract, ignoring subsequent events. On the other hand, there is considerable authority for the proposition that where subsequent events have worked great and unexpected hardship, equity may refuse to intervene, remitting the parties to their legal rights. *These rules are not necessarily inconsistent, if the former is regarded as the general principle, and the latter an exception thereto, although some of the cases apparently announce one or the other as absolute. In several instances, the rule that a change in circumstances working hardship might justify a denial of specific performance has been limited to the situation where the subsequent events relied upon were such as not to be within the reasonable contemplation of the parties at the time of the execution of the contract.*" (Emphasis supplied.) p. 111.

See also 11 A.L.R.2d at 436; *Barr v. Deiter,* 190 Pa. Super. Ct. 454, 154 A.2d 290 (1959).

I believe that the recent decision of *Jensen v. Southwestern States Management Co.,* 6 Kan. App. 2d 437, 629 P.2d 752, *rev. denied* 230 Kan. 818 (1981), controls the present case, despite the difference in the elapsed time involved in the two cases.

In *Jensen,* suit was filed to quiet title to land owned by the plaintiffs except for mineral rights to the coal underlying the land. The defendants owned the mineral rights through six mineral deeds, each over fifty-five years old. In five of the six mineral deeds there were clauses giving the grantee the right to use the surface also, upon payment of $70 or $75 per acre. The trial court held that the price for use of the surface was now inequitable and should the defendant exercise its option to take any surface, it must pay the reasonable value at the time of its use. The defendant, Southwestern States Management Company, appealed from that part of the decision. This court affirmed the decision. The following is applicable to the present case:

"To condition a grant of specific performance upon paying an adequate price rather than a price set before the value of money has eroded by inflation is common. 71 Am. Jur. 2d, Specific Performance § 88, p. 120. Of many circumstances calling for a price adjustment in cases, the following are noted: The contract price would work a hardship not within contemplation of the parties at the time of making the contract. *Munchak Corp. v. Caldwell,* 46 N.C. App. 414, 265 S.E.2d 654 (1980), *aff'd as modified* 301 N.C. 689, 273 S.E.2d 281 (1981). When specific performance is denied, the court is allowed considerable latitude in making orders to obtain equity between the parties. *Schaefer & Associates v. Schirmer,* 3 Kan. App. 2d 114, 590 P.2d 1087 (1979). Specific performance is properly denied when land is worth about $1,000 or $1,500 per acre and the contract price is only $361.72. *Hodge v. Shea,* 252 S.C. 601, 168 S.E.2d 82 (1969). A contract will not be specifically enforced if it 'drives too hard a bargain for a

court of conscience to assist.' *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3rd Cir. 1948)." *Jensen* at 443.

In conclusion, I would point out that three disinterested appraisers appointed by the court found the present fair rental value of the property to be three and one-half times the amount paid during the original term of the lease. This finding portrays a change in values not reasonably foreseeable by the parties at the time the lease was executed, which results in a hardship situation. To enforce the option to renew under the original terms of the lease would be unconscionable and inequitable.

In my opinion the trial court properly exercised its equitable powers and I would affirm its decision reforming the rental provision in the lease.