NOT DESIGNATED FOR PUBLICATION

Nos. 113,497
114,081

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN W. BANNON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Opinion filed May 6, 2016. Affirmed.

*Richard Ney*, of Ney & Adams, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J, PIERRON, J., and JOHNSON, S.J.


*Per Curiam*:  In this consolidated appeal, John W. Bannon appeals from the district court's decision to revoke his probation in Sedgwick County case number 13-CR-1445 and the court's decision to deny his motion to withdraw his plea in case number 14-CR-2494. For the reasons stated below, we affirm both of the district court's decisions.

1

In case number 13-CR-1445, Bannon was convicted of criminal carrying of a weapon. On June 2, 2014, he was sentenced to 12 months' probation with an underlying jail term of 12 months.

On June 18, 2014, the State charged Bannon with two counts of criminal threat and one count of fleeing or attempting to elude an officer in case number 14-CR-1494. These offenses were alleged to have been committed on June 15, 2014. After a preliminary hearing, Bannon was bound over on one count of criminal threat and one count of fleeing or attempting to elude an officer.

On July 24, 2014, Bannon signed a written plea agreement affecting both 13-CR-1445 and 14-CR-1494. In it, Bannon agreed to enter a plea of no contest to one count of criminal threat in 14-CR-1494. In return, the State would dismiss the remaining charge of fleeing or attempting to elude an officer. The parties further agreed to the following in return for Bannon's plea:

"a. Both parties agree to recommend the following sentences: the low number in the appropriate sentencing guidelines grid box;

"b. Both parties agree to recommend the sentence imposed in this case run consecutively to Case No. 13 CR 1445;

"c. Both parties agree to recommend that the statutory presumption be followed in this case and that Defendant's probation in 13 CR 1445 be reinstated;

"d. The State agrees to recommend that the Court order an LSIR in addition to the PSI prior to sentencing.

"e. Both parties are free to argue for any conditions of probation they wish the Court to impose and the level of supervision of Defendant's probation.

"f. The City of Wichita is not a party to this agreement. With that being said, the attorney representing the City in Wichita Municipal Court Case No. 14CM001677 has indicated that upon Defendant's entry of no contest plea and being sentenced in

this case, the City will dismiss Case No. 14CM001677 without prejudice and will consider refiling the same if Defendant has any other police contact relating to firearms."

Below this list of recommendations, the plea agreement also contained the following provision: "The State will not be bound by this recommendation and may make any other sentencing recommendation it deems appropriate, including incarceration, in the event the defendant is arrested, commits a new offense, violates bond conditions or fails to appear for a court appearance at any time prior to sentencing."

The district court held a plea hearing on July 24, 2014, the same day Bannon signed the plea agreement. In accordance with the plea agreement, Bannon pled no contest to one count of criminal threat and was convicted. After the hearing, Bannon was released on bond. Among the bond conditions imposed on Bannon was a prohibition against consuming alcohol and a prohibition against possessing a firearm.

On August 6, 2014, Bannon was stopped by Officer Ronald Sanders of the Wichita Police Department. During the stop, Sanders smelled the odor of alcohol. Bannon had an open bottle of wine and a handgun in his car. Sanders ultimately arrested Bannon for driving under the influence (DUI). Bannon later submitted to an evidentiary breath test that showed his blood-alcohol content was .076.

On August 7, 2014, the district court issued an arrest warrant for Bannon based on his violation of the bond conditions in 14-CR-1494. The next day, the State filed a motion to revoke Bannon's bond.

On August 13, 2014, the State filed a motion for a dispositional departure sentence in 14-CR-1494. It noted that Bannon faced a presumptive sentence of probation but argued that a prison sentence was merited because Bannon's violation of bond conditions

3

demonstrated that Bannon was not amenable to probation and was a risk to public safety. After the State filed its departure motion, Bannon filed a motion to withdraw his no contest plea. In it, Bannon argued the State's actions in filing the departure motion was a breach of the plea agreement. Bannon claimed he was entitled to withdraw his plea based on the State's alleged breach of the plea agreement. Bannon further claimed that the provision in the plea agreement allowing the State to deviate from its agreed upon sentencing recommendations was unenforceable because the provision lacked consideration and was unconscionable.

A hearing on Bannon's motion to withdraw his plea was held on October 10, 2014. The parties did not call any witnesses and provided only argument to the district court. On October 27, 2014, the district court issued a written decision denying Bannon's motion to withdraw his plea based on its finding that the State did not breach the plea agreement.

The sentencing hearing in 14-CR-1494 and probation revocation hearing in 13-CR-1445 both took place on January 2, 2015. First, the State called Officer Sanders as a witness to testify about the circumstances surrounding the August 6, 2014, arrest of Bannon. The purpose of this testimony was to show that the State was no longer bound by the plea agreement's recommendations affecting both cases on appeal. The district court eventually granted the State's dispositional departure motion and sentenced Bannon in 14-CR-1494 to 6 months in prison. The court then revoked Bannon's probation in 13-CR-1445 based on Bannon's violations of the conditions of probation and ordered Bannon to serve a modified jail sentence of 8 months in prison.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in denying Bannon's motion to withdraw plea. Under K.S.A. 2015 Supp. 22-3210(d)(1), a guilty or

4

no contest plea may be withdrawn "for good cause shown and within the discretion of the court" at any time before the sentence is adjudged. This court will not disturb a district court's denial of a defendant's presentence motion to withdraw a plea unless the defendant establishes that the district court abused its discretion. *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). A decision is arbitrary, fanciful, or unreasonable when no reasonable person would have taken the view of the district court. *State v. Wilson*, 301 Kan. 403, 405, 343 P.3d 102 (2015).

Bannon claims the district court abused its discretion in denying his motion to withdraw plea because the following facts constitute good cause as a matter of law under the facts presented in this case: (1) the State breached the plea agreement; (2) the plea agreement was not supported by adequate consideration; and (3) the plea agreement was unconscionable.

1. *Breach of plea agreement*

Generally, a plea agreement is subject to contract principles. *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013). "The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). In ascertaining the intent of the parties, a court must construe all provisions together and in harmony with one another and should not engage in critical analysis of a single or isolated provision. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 313 P.3d 808 (2013). "A contract is not ambiguous unless two or more meanings can be construed from the contract provisions. [Citation omitted.]" 298 Kan. at 418. "'Courts

should not strain to create an ambiguity where, in common sense, there is not one. [Citations omitted.]'" *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1059, 179 P.3d 1104 (2008). But if an ambiguity is found in a plea agreement, the agreement should be strictly construed in favor of the accused. *State v. Wills*, 244 Kan. 62, 69, 765 P.2d 1114 (1988).

Bannon argues the State breached the plea agreement and that this alleged breach constitutes the good cause required to allow him to withdraw his plea as a matter of law. Bannon's argument is based on language in the plea agreement permitting the State to make any sentencing recommendation, including a term of prison, if Bannon violated the conditions of his bond. Notably, Bannon does not dispute he violated his bond conditions and that these violations released the State from its obligation to make the recommendations set forth in the plea agreement. Bannon also does not dispute that these violations permitted the State to make any other sentencing recommendation it deemed appropriate, including incarceration. Instead, Bannon identifies the State's decision to affirmatively file a motion seeking an upward dispositional departure in the 2014 case and its decision to oppose reinstatement of probation in the 2013 case as the basis for his claim that the State breached the plea agreement. Specifically, Bannon asserts a motion for upward dispositional departure is not a "sentencing recommendation" as that phrase is used in the plea agreement. Bannon claims that a recommendation is merely a suggestion to the court about what should be done, while a departure motion is "the affirmative legal trigger that allows the court to determine whether there are 'substantial and compelling' reasons for the court to impose a sentence other than the presumptive sentence." With regard to the 2013 case, Bannon asserts that a decision to oppose reinstatement of probation does not qualify as a sentencing "recommendation" under the facts presented because Bannon already had been sentenced in that case.

6

To begin with, we are not persuaded by Bannon's assertion that filing a motion to depart and opposing reinstatement of probation do not constitute sentencing recommendations. In direct contradiction to Bannon's assertions—which Bannon concedes are unsupported by any relevant authority—the Kansas Sentencing Guidelines use the term "recommend" when discussing departure sentences. K.S.A. 2015 Supp. 21-6812(c) allows a prosecutor negotiating a plea bargain to "*recommend* a particular sentence *outside of the sentencing range* only when departure factors exist and such factors are stated on the record." (Emphasis added.) But more importantly, the plain language of the plea agreement in this case was remarkably broad. In this written document, the parties agreed that if Bannon violated the conditions of his bond, the State could "make any other sentencing recommendation it deems appropriate, *including incarceration*." (Emphasis added.) By filing a dispositional departure motion, the State was doing precisely what the plea agreement authorized it to do: ask the district court to incarcerate Bannon. The State did not breach the plea agreement in doing so.

Based on our finding that the State did not breach the plea agreement, we conclude the district court did not abuse its discretion in finding that Bannon had failed to show the good cause required to allow him to withdraw his plea.

## 2. *Consideration*

Next, Bannon argues that the provision relieving the State of its obligation to make the agreed upon sentencing recommendations was not supported by consideration. "It is an elementary principle of law that to be enforceable a contract must be based upon valuable consideration." *Apperson v. Security State Bank*, 215 Kan. 724, 734, 528 P.2d 1211 (1974). Consideration is "any benefit, profit or advantage flowing to the promisor which he [or she] would not have received but for the contract, or any loss or detriment to the promisee." *Temmen v. Kent-Brown Chevrolet Co.*, 217 Kan. 223, 231, 535 P.2d 873 (1975). But, "an agreement to do or the doing of that which a person is already bound to

7

do does not constitute a sufficient consideration for a new promise." *Apperson*, 215 Kan. at 734. The interpretation and legal effect of written instruments present questions of law subject to unlimited review by this court. *In re Marriage of Traster*, 301 Kan. 88, 104, 339 P.3d 778 (2014).

In support of his argument that the plea agreement lacked consideration, Bannon notes he had a preexisting legal duty to obey the law, appear at sentencing, and abide by his bond conditions. As a result, he argues that his promises to do those things prior to sentencing could not have served as consideration for the State's promises regarding sentencing. To accept Bannon's argument, however, we would be required to improperly isolate one provision within the plea agreement. The provision that released the State from its obligation to make certain sentencing recommendations was merely one of many terms found in the binding plea agreement. The provision clearly described what would happen if Bannon failed to obey the law, show up for court, or abide by his bond conditions. And notably, this provision would have had no effect on the parties' agreement had Bannon not violated his bond conditions.

When viewed in its entirety, the parties agreed that Bannon would plead no contest to one count of criminal threat and that, in return, the State would dismiss one count of fleeing or attempting to elude an officer. The dismissal of this count was unquestionably a benefit to Bannon. Because this exchange of promises alone is sufficient consideration to form a binding contract, we find the plea agreement as a whole was supported by consideration.

To the extent Bannon is arguing that some amount of consideration was needed above and beyond the dismissal of one of the counts against him in order for the State to be relieved of its obligation to make the agreed upon sentencing recommendations, this argument fails. In *Moler v. Melzer*, 24 Kan. App. 2d 76, 77, 942 P.2d 643 (1997), the parties entered into a real estate contract that included the following clause: "'In the case

that the client should become dissatisfied with the inspection, it's [*sic*] findings, or future occurrences, the client will hold the inspector or the company represented liable for the cost of the inspection only.'" Moler argued the clause was a release of liability that must be supported by separate consideration. But this court found the clause was not a release of liability and noted that "Kansas has never imposed a requirement that a contract clause limiting liability be supported by separate consideration." 24 Kan. App. 2d at 78.

The plea agreement provision at issue here is comparable to the clause in *Moler*. When Bannon violated his bond conditions, the State was released from its promise to make certain recommendations at sentencing. But the State was *not* released from its promise to dismiss the second count against Bannon. In the same way one party sought to limit its liability under the contract in *Moler*, the State here only sought to limit its obligations in the event Bannon failed to cooperate with the court or act in a lawful manner. These are legitimate concerns for the State when agreeing to recommend probation to a criminal defendant. Accordingly, no additional consideration was needed to support the provision in the contract challenged by Bannon.

3. *Unconscionability*

Finally, Bannon argues that the plea agreement provision relieving the State of its responsibility to make the agreed upon sentencing recommendation was unconscionable and therefore unenforceable. A contract may be deemed unconscionable if it is unfairly surprising, one-sided, or oppressive. But unequal bargaining power alone is insufficient to render a contract unconscionable. *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 757-60, 549 P.2d 903 (1976).

In his brief, Bannon acknowledges the holding of *State v. Bell*, No. 111,063, 2015 WL 1123022 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. __ (September 23, 2015). There, a panel of this court found that the precise plea agreement clause at issue

here was not unconscionable. 2015 WL 1123022, at *1, 5. In *Bell*, the State agreed to recommend the lowest guideline sentences for all of the criminal offenses charged against Bell. The State entered into a written plea agreement with Bell containing the same clause that Bannon challenges in this case. Bell failed to appear at his sentencing hearing. Relieved of its obligation to recommend the lowest guideline sentences, the State instead recommended the maximum guidelines sentences. 2015 WL 1123022, at *1. Bell did not file a motion to withdraw his plea but directly appealed his sentence by arguing that his plea agreement was unconscionable. 2015 WL 1123022, at *2. This court disagreed and affirmed his sentence. 2015 WL 1123022, at *5-6.

Bannon argues that his case is distinguishable from *Bell*. First, he points out that the State sought a dispositional departure in this case but only sought higher guidelines sentences in *Bell*. Bannon also points out that Bell did not seek to withdraw his plea. But in both cases the provision authorizing the State to disregard the agreed upon sentencing recommendation was identical. Bannon fails to explain why Bannon's motion to withdraw his plea, which occurred after the plea agreement was signed, should affect our analysis of whether the written contract provision was unconscionable. Generally, courts must look to the circumstances that existed when the agreement was entered into to judge whether it is conscionable. *Estate of Link v. Wirtz*, 7 Kan. App. 2d 186, 189, 638 P.2d 985, *rev. denied* 231 Kan. 800 (1982).

Bannon does, however, cite the State's dispositional departure motion as evidence that the plea agreement was unfairly surprising. He again argues that the term "sentencing recommendation" as it was used in the plea agreement did not include the filing of a dispositional departure motion. In addition to the reasons discussed above in denying Bannon relief on this claim, we find it difficult to see how Bannon could have been surprised by the State's departure motion. The plea agreement specifically stated that the State could recommend incarceration if Bannon violated his bond conditions. Since

10

Bannon did violate his bond conditions, he cannot now credibly claim that he was unfairly surprised by the State's motion seeking to have him incarcerated.

In *Wille*, the Kansas Supreme Court noted 10 factors that courts could use to determine if a given contract is unconscionable:

"(1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position [citations omitted]; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods [citation omitted]; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect [citation omitted]; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract [citation omitted]; (7) phrasing clauses in language that is incomprehensible to a lay[person] or that divert his [or her] attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate [citation omitted]; and (10) inequality of bargaining or economic power. [Citations omitted.]" 219 Kan. at 758-59.

Bannon argues that his plea agreement was unconscionable because of the boilerplate nature of the provision relieving the State of its obligation to recommend a certain sentence and because of the unequal bargaining power between the parties. Even if true, the fact that the language was boilerplate is merely one factor in many to consider when determining if a provision is unconscionable. As the panel in *Bell* pointed out, under the challenged provision, it is the defendant who ultimately controls whether he or she will receive the bargained-for sentencing recommendation. See *Bell*, 2015 WL 1123022, at *3. If Bannon had abided by his bond conditions, the State presumably would not have filed a dispositional departure motion.

Bannon also asserts that he and the State had unequal bargaining power. He cites *Wills*, in which the Kansas Supreme Court noted that a defendant has only one bargaining chip: the ability to insist on a trial. 244 Kan. at 68. Bannon argues that this unequal bargaining power combined with the boilerplate provision challenged on appeal render the plea agreement unconscionable. He notes, as an example, that the plea agreement allowed the State to make any sentencing recommendation it deemed appropriate in the event Bannon was merely arrested for a crime, whether he was innocent of the charges or not. While this hypothetical situation may be troubling, it is irrelevant to this case. The State argued at sentencing that it was the violations of Bannon's bond conditions and not his arrest that allowed it to recommend a dispositional departure sentence.

To that end, Bannon argues that he was entitled to a presumption of innocence in the face of charges stemming from his August 6, 2014, traffic stop. As a preliminary matter, we note that Bannon has never argued the district court erred in finding that he violated his bond conditions. An issue not briefed is deemed waived and abandoned. *State v. Jones*, 300 Kan. 630, 639, 333 P.3d 886 (2014). But even if he had not abandoned his argument, it has no merit because the State presented sufficient evidence to support the district court's finding that Bannon violated his bond conditions. Officer Sanders testified that Bannon had a gun and an open bottle of wine in his car. Sanders also testified that an evidentiary breath test showed that Bannon had consumed alcohol.

Bannon's final argument is that the plea agreement was unconscionably one-sided because the State retained the benefit of its bargain while he lost his. But as noted above, part of the benefit Bannon received from the plea agreement was the dismissal of one count of fleeing or attempting to elude an officer. Bannon acknowledges the dismissal of this count in his brief but downplays its significance by stating that he "did not receive any other benefit under the plea agreement." The fleeing or attempting to elude charge against Bannon was a severity level 9 person felony. Dismissal of a person felony charge

is a significant benefit. As a result, we find that the plea agreement was not unconscionably one-sided.

Affirmed.